<em>Litchfield,</em><br>June,<br>1827.<br><br>Beckley<br><em>v.</em><br>Boardman.

*Boardman* obtained a judgment, in the county court, against *Beckley,* and having taken out execution, caused it to be levied on his personal property. *Beckley* then sued out a writ of error on such judgment, and had it served on the creditor and the officer holding the execution. After this, the officer collected the execution. The writ of error was duly returned to the superior court; and the judgment of the county court was reversed. The defendant in error being a bankrupt, the plaintiff in error moved the superior court for an order upon the officer to pay into court the money collected upon the execution. Upon these facts the question arising upon such motion was reserved for the advice of this Court.

The case was now submitted without argument.

BY THE COURT: No rule will be made upon the officer in this case. But if he had notice not to pay the money over to *Boardman,* and has, notwithstanding such notice, made payment, the plaintiff in error may sustain *indebitatus assumpsit* against him for the money. If he paid it over without notice, the plaintiff in error is without redress as against him.

Motion denied.

—◦◦—

## LOCKWOOD *against* STURDEVANT.

Covenants in a mortgage deed, that the grantor is seised of the premises as a good indefeasible estate in fee-simple; that he has good right to convey the premises; that they are free from incumbrances; and that the grantor will warrant and defend the premises against all claims and demands,—are effective, and an action will lie for a breach of them.

The covenant that the grantor has an indefeasible estate in fee-simple, is not supported, by an estate for life in the grantor, as tenant by the curtesy, with actual possession.

*Litchfield,*
June,
1827.

Lockwood
*v.*
Sturdevant.

To render a conveyance of land, by an administrator, valid, his authority must appear on the deed of conveyance, and with such certainty, that the act done shall visibly be in pursuance of the authority given.

Therefore, where a grantor described himself, in the deed, as administrator, and also referred to an order of the court of probate as the source of his authority; and then granted the estate, with a covenant that he was seised as administrator, and other covenants; it was held, that such deed was ineffectual to convey the estate; and that the defect could not be supplied, by recurrence to the probate records.

An authority to an administrator to sell the estate of his intestate, is a personal trust, and must be pursued strictly.

Therefore, where the order of sale authorized the administrator to sell the real estate of the deceased sufficient to raise 175 dollars, and he sold, and granted by deed, estate to the amount of 188 dollars; it was held, that the administrator, in such case, exceeded his authority, and that the proceeding was, therefore, void.

The execution of a release deed, by the mortgagor, to the mortgagee, and the delivery up of the note given for the mortgage debt, do not extinguish the title of the mortgagee under the mortgage deed, or the covenants contained in such deed.

Though where the equitable and legal estate are united in the same person, the former is generally merged in the latter; yet if such person has a beneficial interest in keeping the estates distinct, this will prevent a merger.

The security afforded by a mortgage title, guarded by covenants, is a sufficient reason for keeping it distinct from a superior legal title.

A plea of payment cannot be supported, by shewing, that something collateral, by agreement of the parties, has been received in satisfaction.

Though the rule of damages for a breach of the covenants of seisin in fee, and of good right to convey, is, generally, the consideration paid, with interest; yet if the grantor was seised of a life estate, the value of that life estate is to be deducted.

This was an action on the covenants in a deed, from *John Sturdevant,* deceased, and *John S. Sturdevant,* to *Samuel Lockwood,* the plaintiff, dated the 19th of *July,* 1820. The covenants were those usually inserted in our deeds of warranty, and were expressed in the same terms. The breach was thus assigned : That at the time of executing the deed, neither the defendant, nor the deceased, was the lawful owner of the land in question, *viz.* a certain tract of 100 acres, nor lawfully seised thereof, as a good indefeasible estate in fee-simple; nor had they, or either of them, good right to sell and convey the same ; nor have they, or either of them, or the legal representatives of the deceased, warranted and defended said land ; for, at the execution of said deed, five undivided sixth parts of about 4 3-4 acres, of the value of 1400 dollars, belonged to, and was owned in fee by *Andrew Sturdevant, Lucy Beach, Sally Ann Judson, Hannah Porter* and *Julia Sturdevant,* each one sixth part, as heirs

at law and devisees of their mother, *Sarah Sturdevant,* the former owner in fee thereof, who devised the same to them, to hold in fee, after the death of her husband, the said *John Sturdevant,* to whom she devised it for life, and appointed *Joel Sanford* sole executor, who accepted the trust, and since the death of said *John Sturdevant,* caused the will to be proved and approved, and by virtue of an order of probate, caused a distribution to be made to said heirs and devisees, turning the plaintiff out of possession, &c.    The plaintiff demanded 500 dollars damages.

The defendant pleaded, 1st, performance.    2ndly, That the deed was given in security of a note of the plaintiff against the defendant and the deceased, for 3813 dollars, dated the 7th of *March,* 1820, payable in six years, and such other debts as the plaintiff might have against them, or either of them, at the time said note should be paid; that by said deed was conveyed another piece of land, for the same purpose, of about 80 acres, encumbered by a prior mortgage, executed by *John Sturdevant* to the defendant; and that on the 3rd of *January,* 1825, it was accorded and agreed, by the plaintiff and *John Sturdevant* and the defendant, that the plaintiff would accept of them a release of all their right to the tract of 100 acres mentioned in the declaration, and of the tract of 80 acres, in full satisfaction of said note, and of all other claims against them, and of the covenants in the deed, and of any actual or supposed breach thereof.    3rdly, That the deed was given as security, as averred in the second plea, and that within six years after the date of the deed of *January* 3rd, 1825, *John Sturdevant* made full payment of said note, and that he and the defendant made full payment of all other debts and claims, which the plaintiff had against them, or either of them, at the expiration of said six years.

Issue was joined on the first plea.    The second and third pleas were traversed, on which issues were joined.

On the trial of the cause, on these issues, at *Litchfield, February* term, 1827, before *Lanman,* J., the plaintiff, having adduced in evidence the deed of *John Sturdevant* and the defendant, to shew a title in the former, offered a deed from *Lois Fenn* and *Joel Sanford,* administrators of *Job Fenn,* deceased, who, at the time of his death, was the owner of the land.    The deed described the grantors, and stated the authority under which they acted, in these words: "We, *Lois Fenn* and *Joel*

*Lockwood
v.
Sturdevant.*

*Sanford*, of *New-Milford*, in the county of *Litchfield*, adminis-
trators on the estate of *Job Fenn*, late of said *New-Milford*, de-
ceased, and by order of the court of probate for the district of
*New-Milford*." They then proceed, in consideration of a cer-
tain sum, to "give, grant, bargain, sell and confirm unto the said
*Sarah*, and to her heirs and assigns forever" the before-men-
tioned tract of 4 3-4 acres, describing it. Covenants were in-
troduced in the following terms : "And we, the said *Lois Fenn*
and *Joel Sanford*, do, for ourselves, our heirs, executors and
administrators, covenant with the said *Sarah Sturdevant*, her
heirs and assigns, that at and until the ensealing of these pres-
ents, we are well seised of the above described premises, as ad-
ministrators on the estate of the said deceased, as a good inde-
feasible estate in fee-simple ; and have good right to bargain
and sell the same, in manner and form as is above written ; and
that the same is free from all incumbrances whatsoever. And
furthermore, we, the said *Lois* and *Joel*, do, by these presents,
bind ourselves and our heirs forever to warrant and defend the
above granted and bargained premises to her the said *Sarah*,
her heirs and assigns, against all claims and demands whatso-
ever." The conclusion of the deed was as follows; "In wit-
ness whereof, we have hereunto set our hand and seal, the 1st
day of *November, Anno Domini*, 1804.

*Lois Fenn*,     [L. S.]
*Joel Sanford*." [L. S.]

To the admission of this deed the defendant objected, on the
ground,that it furnished no evidence of title in *Sarah Sturdevant*
to the land, and was void on the face of it ; but the judge de-
cided, that such deed was not wholly void ; that as it appeared
from the deed, that it was executed pursuant to an order of the
court of probate for the district of *New-Milford*, if upon pro-
ducing the records of that court, it should appear, that there
was an order authorizing the execution of the deed, then it
might be evidence of title. The plaintiff thereupon offered
in evidence the following documents : "At a court of probate,
holden at *New-Milford*, on the 12th of *October*, 1804. Pres-
ent, *Daniel Everitt*, Esq., Judge. The administrators on the
estate of *Job Fenn*, late deceased, presented their account of
the sales of the personal property of the deceased, made ac-
cording to previous order of this court, which account is ac-
cepted, and ordered to be recorded. Amount 345 dollars, 71
cents.

"At the same court: Said administrators presented their bills of expence of administration on said estate, which were allowed, as on file: Total amount 96 dollars, 83 cents.

"At the same court: Whereas it appears of record, that the debts due from said estate, as per commissioners' report, are

$520.70

The amount of sales of personal estate      345.71

Leaving to be raised by sale of land    -    174.99."

Then followed an order of sale of the real estate of the deceased, sufficient to raise the last mentioned sum, with incident charges of sale.

"At a court of probate, holden at *New-Milford*, on the 12th day of *November*, 1804. Present, &c. The commissioners on the estate of *Job Fenn*, late of *New-Milford*, deceased, presented their account of sales of real estate to the amount of 188 dollars, which was accepted, and ordered to be recorded."— There was a subsequent order, disposing of the surplus of 13 dollars, 1 cent. To the admission of these records the defendant also objected; but the judge admitted them.

Evidence was offered, by the defendant, to shew, that *John Sturdevant* was, at the time of the execution and delivery of the deed to the plaintiff, in the actual possession of the land described in the declaration, having a freehold estate therein, during his life, as tenant by the curtesy, in right of his wife, and also by virtue of her last will.

In support of the facts set forth in his second and third pleas, the defendant read in evidence the deed of release described therein, accompanied by evidence to prove, that at the time of the execution of that deed, it was agreed between the parties to it, that it should be executed in consideration that the plaintiff would give up the note and the other debts and claims secured by the mortgage; that the only payment or satisfaction ever made of such note and other claims and debts, was the execution and delivery of such deed; and that in pursuance of such agreement, and solely in consideration of the receipt of such deed, they were given up accordingly.

It was admitted, that the plaintiff had not taken possession of any part of the mortgaged premises, but that the mortgagers had at all times remained in possession, until after the execution of said release deed; when the plaintiff went into possession.

*Litchfield,*
June
1827.

Lockwood
*v.*
Sturdevant.

The plaintiff adduced evidence to prove the ouster and eviction alleged in his declaration.

The defendant claimed, and prayed the court to instruct the jury, first, that the plaintiff had failed to shew, that there had been a breach of the covenant of seisin and good right to convey; secondly, that the entry of the plaintiff on the land, was not under his mortgage deed, but under the release deed, by a distinct and independent title; and that an eviction, therefore, if proved, did not constitute a breach in any of the covenants in the mortgage deed; thirdly, that said payment and satisfaction, having been made upon the consideration and in pursuance of the agreement above stated, and within the time limited in the condition of the mortgage deed, all the covenants in that deed were thereby discharged; fourthly, that if the covenant of seisin and good right to convey, had been broken, the plaintiff was entitled to recover only nominal damages. The judge directed the jury, that if they should find, that the release deed was accepted, by the plaintiff, in satisfaction of the covenants in question; or that full payment of the note and other debts, was otherwise made; they would return a verdict for the defendant. The judge further directed the jury, that if they should find, that at the date of the mortgage deed, there was an outstanding title in the devisees of *Sarah Sturdevant* to the land in question; that an entry was made thereon, after the death of *John Sturdevant*, by their agent, claiming in their right, and thereby evicting the plaintiff from the possession thereof; that no payment of said note was made, otherwise than by an arrangement to extinguish the equity of redemption, and yield up the land pledged for the mortgage debts; notwithstanding *John Sturdevant* was in actual possession of said land, claiming an estate for life therein; notwithstanding the plaintiff took no actual possession thereof until the date of the quit-claim deed; notwithstanding said note was given up in consideration of such quit-claim deed; and notwithstanding said covenants were contained in a deed of mortgage, and the law-day had not expired; the jury would find all the issues in favour of the plaintiff, and that he recover in damages the amount of the consideration paid [for said five sixth parts of said 4 3-4 acres of land, with interest from the 3rd day of *January*, 1825, together with costs of suit.

The jury returned a verdict for the plaintiff, with damages

pursuant to the charge; and the defendant moved for a new trial.

*Benedict* and *Sanford*, in support of the motion, contended, 1. That the covenants contained in the deed of the 19th of *July*, 1820, and set forth in this declaration, would not sustain an action. They are to be understood with reference to the subject matter, which is a *security*, and not a *sale*. A mortgage is not a conveyance of land. It is a mere lien; a chose in action; a right to the possession of the land for the sole purpose of rendering it available for the payment of the debt. It is personal estate strictly. The mortgagee is called *tenant in mortgage.* If he take possession, he is not in as owner, but is liable to be ousted, on payment of the debt, and to account for the rents and profits. Now, if in a mortgage deed, the mortgagor enter into covenants regarding the estate, they must be construed with reference to the subject matter. If they be such whereof a warranty is not predicable; or if they regard an estate which it is in the power of the mortgagor, at any time, to take away and defeat; then the covenants are inoperative, because there is nothing for them to operate upon. From the nature and design of these covenants, they are applicable only to a thing *sold*, and not to a thing merely held in pledge.

2. That these covenants have not been *broken*. First, has the covenant that the grantors *were seised*, and *had good right to convey* this land, been broken? That *John Sturdevant* was well seised, is proved. He had a right to the possession of the land, as tenant by the curtesy, and under the will of his deceased wife. He was seised of a freehold estate in the land. *Mitchell* v. *Hazen*, 4 *Conn. Rep.* 495. *Trambly* v. *Henley*, 4 *Mass. Rep.* 441. *Prescott* v. *Trueman*, 6 *Mass. Rep.* 627, 631. It may be said, that only one of the grantors was seised. What then? He had good right to convey; and all his title passed.

Secondly, has the covenant of *warranty* been broken?—To constitute a breach of this covenant, the grantee must have taken possession under the deed, and then been disseised, by the entry and eviction of the true owner, by an elder and better title. But the plaintiff never entered upon this land, under this mortgage deed, at all. Until the deed of release was given, he never touched the land. When he entered, it was under the latter deed—by virtue of a *new title*, derived from a *new contract* with the mortgagor—into an indefeasible estate

in fee-simple, without liability to account for rents and profits.

3. That if there was a breach of either of the covenants, the right of action was *discharged,* because before the law-day had expired, the parties entered into a new agreement, by which the plaintiff agreed to accept the land mortgaged in satisfaction of the debt ; and took a release of the land ; and gave up his note ; and from a mere pawnee of the property, became the owner in fee-simple.   The *debt* was *discharged ;* and of course, nothing was left, on which the covenants could operate ; their sole object being to secure the payment of it.   *Pow. Mort.* 9. 10.   The very taking of the title under a new consideration, was a discharge of the covenants.

4. That the deed from *Lois Fenn* and *Joel Sanford,* to *Sarah Sturdevant,* was inadmissible.   First, it does not set out so much of the order of the court of probate as to enable the court to discover whether the grantors had authority to execute it.   2 *Swift's Dig.* 789, 790.   3 *Stark. Evid.* 1197, 8. *Gilbert* v. *The Columbia Turnpike Company,* 3 *Johns. Cas.* 107. Secondly, the grantors do not profess to sell the land of *Job Fenn,* nor his interest in it ; nor does it appear from the deed to be his land. Thirdly, the grantors covenant as administrators, (which is a *personal* covenant,) that *they* own it, and have good right to convey.   Fourthly, they *bind themselves* to warrant and defend it, and sign the deed in their *individual* character.   The objection to the deed, then, is, that it is void on the face of it, and conveys no title ;   and that, of course, it cannot be aided by any extraneous proof; the question not being whether the grantors in fact had authority, but whether they have duly executed it.   But, fifthly, if the deed was "not wholly void," but might be aided, by the records of the court of probate, still the records shewn on the trial, were insufficient for the purpose.— The order of the court was to sell enough land to raise the sum of 174 dollars, 99 cents, together with incident charges of sale.   The amount sold, was 188 dollars; leaving in the administrators' hands 13 dollars.   The administrators having transcended their order, the whole sale was void.   *Co. Litt.* 258. *a.* & n. 202. by *Butler.   Alexander* v. *Alexander,* 2 *Ves.* 644.   *Com. Dig. tit.* Poiar. C. 6.

5. That the charge was incorrect with respect to the *damages ;* because the jury were directed to estimate them, without any regard to the state of the debt, on which the covenants were intended to operate.   Had the debt all been paid in cash,

before the law-day had expired, the rule of damages, according to the charge, would have been the same.   *Guthrie* v. *Pugsley*, 12 *Johns. Rep.* 126.

*D. S. Boardman* and *J. W. Huntington*, contra, contended, 1. That the covenants usually contained in absolute deeds, are equally valid, when inserted in a mortgage deed, and an action lies for a breach.   An ordinary deed of mortgage with covenants, contains the grant of a *present* interest, subject to be defeated on the performance of the stipulated act, at the stipulated time; and if such act be not thus performed, the conveyance is forever complete at law, in all its parts.   Why should not the covenants be binding? To hold them otherwise would involve monstrous absurdities.   In the first place, every mortgage deed contains the words *"give and grant,"* which import a *covenant in law*, which is a covenant *for title;* for if the grantor does not own the premises purporting to be conveyed, he conveys nothing.   The doctrine contended for, by the defendant, would nullify even this covenant; and would, of course, nullify the whole granting clause of the deed.   Secondly, the covenants of seisin and good right to convey, (usually, though not always, synonymous,) are also covenants for title.   *Shep. Touch.* 170.   *Howell* v. *Richards*, 11 *East* 461.   Now, are these two covenants, and also the following ones against incumbrances and for warranty, as well as the covenant in law, to be expunged? If so, what will be left in the deed to create the *security* intended? The covenants under consideration, as well as that in law, are *personal* covenants; they run not with the land; they can be sued on only by the grantee, or his personal representatives.   Mortgages are exclusively devoted to the security of personal property—mere *choses in action;* and if the personal covenants entered into, for the sole purpose of such security, are of no efficacy, what are mortgages good for? Why are such covenants used? The deed may, indeed, give the mortgagee a right of entry on the mortgaged premises, as against the mortgagor.   But what avails this right, if the mortgagee may be turned out, by one having better title, and subjected to costs and damages for mesne profits,—and that without recourse to the grantor? Thirdly, there is another point of view, in which the doctrine contended for by the defendant, may be placed, which demonstrates its unsoundness, not to say absurdity.   It will not be claimed, that after *foreclosure,* the

*Litchfield,*
June,
1827.

Lockwood
*v.*
Sturdevant.

covenants in question are inoperative. Let it then be enquir-ed, what there is in a decree of foreclosure, the only office of which is to take away the remaining equity of the mortgagor, which can give life and efficacy to what was before a mere dead letter? Covenants must have their legal existence from their execution, and cannot be thus born out of season. Besides, three out of four of the covenants usually found in such deeds, and actually contained in the one in question, must have been broken, if at all, at the moment of their creation; because the facts inserted in them were then either true or false. From a breach of contract the law always infers damages; and of course, a right of recovery is immediate.

2. That the deed from the administrators of *Job Fenn* to *Sarah Sturdevant,* was admissible in evidence. First, the author-ity of the grantors, sufficiently appears. It is stated in the deed, that the administrators acted under authority of the court of probate, and by order of that court. To hold this allegation of authority insufficient, would be to require all the proceedings of the court of probate, in the settlement of the estate, to be set out in *hæc verba;* for every order of sale is founded on the previous proceedings. There can be no intermediate point, where you can stop. But this would be as intolerable as un-precedented. The only correct and practicable course, is, to state the authority, explicitly but generally, in the deed; to ex-ecute the deed pursuant to that authority; and then, if the au-thority exists, it is enough. This has been done in the present case. Secondly, the sale was a valid sale. The order author-ized land to the amount of 74 dollars, 99 cents, *with incident charges of sale,* to be sold; and the amount actually sold, was 188 dollars. It does not, and it need not appear, what the in-cident charges of sale were. After *acceptance,* it will be pre-sumed, that they amounted to the difference between the amount specified in the order and the amount for which the land was actually sold. Besides, the sale can be attacked, on the ground of an excessive allowance for incident charges, by *appeal* only. This question cannot be tried in a collateral suit. 1 *Day* 170. 3 *Day* 318. 1 *Conn. Rep.* 467. But if even this were to be tolerated, the judge could not reject the evidence of the accept-ance *as matter of law,* but ought to submit it as *a fact* to the jury. The absurdity of this is sufficiently obvious. But ad-mitting that the administrators transcended their authority, the consequence must be, that they and their sureties are respon-

sible,—not that the title of the purchaser is a nullity.   He is a
perfect stranger to the administrators' proceedings with the
court of probate, and is not to lose his land, because they, by
mistake or fraud, have overcharged the expenses incident to
the sale.

3.  That the judge having charged the jury, that if they should
find, that independent of the quit-claim deed, *full payment* of
the mortgage debt had been made ; or if they should find, that
the quit-claim deed was *received in satisfaction* of the cove-
nants in the mortgage deed, they must find for the defendant ;
the findings of the  jury upon the second and third issues, put
an end to the defence set up by them : for surely, the delivery
of a quit-claim deed, is not a technical payment : and if it be
not technically a payment, it certainly cannot have  the effect
to destroy the muniments of the plaintiff's title to the land, by
nullifying the covenants in his deed, which formed the princi-
pal part of the value of it.   It would  be a novel and extraor-
dinary proposition, that a quit-claim deed, the office, and the
sole object, of which, is, to extinguish the equity of redemp-
tion, and is, and always has been, considered to be tantamount
in effect to a foreclosure, should work an entire extinguishment
of the  *legal  title* acquired by the mortgage, instead of an ex-
tinguishment of the equity of redemption, and thus substitute a
mere title by quit-claim, for one fortified by the usual covenants,
which he who forecloses, enjoys.

4.  That the defendant has  no ground of complaint with re-
spect to the rule of damages.   The  direction to the jury was,
in the event of their finding the issues for the plaintiff, to give
in damages  the amount of the purchase  money and interest.
Since the decision in *Mitchell* v. *Hazen*, 4 *Conn. Rep.* 496. this
rule will  not be questioned as applicable to  the covenants of
seisin   and good right to convey.   If any different rule would
be applicable to a breach of the covenant of warranty, it must
have been, of course, *a larger* sum, *viz.* the purchase money
and in addition thereto the value of the improvements made by
the plaintiff while in possession.

HOSMER, Ch. J.   This case presents several questions, to
which I shall attend, in the order in which they naturally arise.

The covenants, on which the plaintiff has founded his action,
are contained in a mortgage  deed, as a security of the title to
the estate mortgaged.   The grantors  covenanted, not merely

*Litchfield,*
June,
1827.

Lockwood
*v.*
Sturdevant.

*Litchfield,*
*June,*
*1827.*

Lockwood
*v.*
Sturdevant.

that they were seised of the premises, but *that their seisin was of an indefeasible estate in fee-simple,* and *that they had good right to convey this quantity of interest.*

In the first place, the defendant objects, that the above covenants in a deed of mortgage, are not valid.

It is not a little extraordinary, at this late period, and in the face of the ancient and universal practice on both sides the *Atlantic,* to accompany deeds of mortgage with the supposed exceptionable covenants, that such an objection should be made. In the absence of established principle and judicial determination, the practice alluded to, is the strongest possible expression of opinion, that the covenants in question are legal. It is the uncontradicted voice of the civilized world, so far, at least, as the common law extends.

That such covenants are useful as a security to titles, is undeniable; and that they are legally admissible, is too clear to be questioned. As it is an universal principle relative to property, that every person may freely use, enjoy and dispose of all his acquisitions, without any controul, save only by the laws of the land; so, for the same reason, it is incontrovertibly settled, that he may bind himself, by any engagement, which the law does not prohibit. 1 *Bla. Com.* 136. *Shep. Touch.* 159. In this essentially consists civil liberty, which is the power of acting as one thinks fit, so far as this license is not restrained, by natural or civil law. From this it results, as a principle, that if the subject of a contract be not evidently useless, and be legally and morally possible, the contract is valid.

The plaintiff has an interest in the title of his grantor; and to render him secure, covenants of seisin and of right to convey are both useful and necessary. Those covenants relate directly to the title; and to guard this point, whatever the nature and extent of the estate granted may be, they are of obvious importance. As there is no law prohibiting the covenants in question, undoubtedly they are legal.

It was next insisted on, in the argument, that the covenants of the defendant have not been broken. It is an established principle, that the covenants of seisin and of good right to convey, if the grantor was not seised, and had not the right asserted, are broken instantaneously on the delivery of the deed. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 495. 510. *Mitchell* v. *Warner,* 5 *Conn. Rep.* 497.

Litchfield,
June,
1827.

Lockwood
v.
Sturdevant.

Admitting this, it, however, has been contended, that inasmuch as one of the grantors was in possession of the mortgaged premises, seised of an estate for life, the covenants have not been broken; and this position seems to derive countenance from certain determinations made in the state of *Massachusetts*. It has been said by Ch. J. *Parsons*, in *Manton* v. *Hobbs*, 2 *Mass. Rep.* 433. that to sustain a covenant of seisin, it is not necessary " to shew seisin under an indefeasible title; that a seisin in fact is sufficient; and that if, at the time the grantor executed the deed, he had the exclusive possession of the premises, *claiming* the same in fee-simple, by a title adverse to the owner, he was seised in fee, and had good right to convey." To the same effect were the opinions expressed in *Twambly* v. *Henley*, 4 *Mass. Rep.* 441. and *Prescott* v. *Trueman*, 4 *Mass. Rep.* 627.

If these determinations are considered as law, they will not aid the party citing them. The seisin in fact spoken of, must be conjoined with a colourable claim to the fee-simple. But no such claim, in this case, is pretended.

Although my judgment might safely be rested on the inapplicability of the decisions cited, I am constrained to observe, that notwithstanding the veneration I entertain for the highly accomplished jurist, who expressed the above opinions, I cannot yield to them my assent. That which shows *covenants of seisin* and *of right to convey*, to be broken, is their falsity. If the covenants are true, they remain inviolate; if they are not true, they are broken. On the same principle, if they are entirely false, they are wholly violated; and if partially untrue, they are broken but in part only. All this is self-evident. Although the covenantor should have had the actual possession of the premises, and an ideal or imaginary right founded on a supposed title that was merely colourable, *yet this is not a legal seisin in fee;* and nothing short of this will support a covenant that the grantor is seised in fee-simple, because nothing short of this proves the covenant to have been true. This construction necessarily results from the unequivocal words of the covenantor, and the unquestionable object of the covenant. *That* was security to the purchaser, to the extent of the title purporting to have been conveyed. The determinations on which I am expressing an opinion, are opposed to the plain intendment of the most unambiguous expressions; to the object of the parties in making the covenants in question; and to their utility, by reducing them to little more than a nugatory agreement. A seis-

VOL. VI.　　　　　49

*Litchfield,*
*June,*
*1827.*

*Lockwood*
*v.*
*Sturdevant.*

in in fact of an estate in fee-simple, if the word seisin intends any thing more than possession, is an expression without meaning, where there is no seisin in law. In the nature of things, there is but one species of seisin in fee, and that necessarily is, the possession of an estate conjoined with such a legal interest as the term fee-simple denotes. "The covenant for title," as was said by Lord *Ellenborough,* in *Stowell* v. *Richards,* 11 *East,* 633. 642. in reference to a covenant of good right to convey, "is an assurance to the purchaser, that the grantor has the *very* estate, in quantity and quality, which he purports to convey, *viz.* in this case, an indefeasible estate in fee-simple." Now, a seisin in *fact,* as it has been called, is not an *indefeasible* estate; and a seisin *for life,* is not an estate in *fee.*

The question I have been discussing, has been decided by this Court, in *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 495.

The defendant has attempted to show a seisin in fee, under a deed executed by *Lois Fenn* and *Joel Sanford,* the administrators of *Job Fenn,* to *Sarah Sturdevant.* An objection to the competency of this deed, was made by the plaintiff, on the ground of its invalidity, by reason of its not showing a sufficient authority in the administrators to sell and convey the intestate's estate; and for the further reason, that the deed does not purport to be in execution of a power, but to grant the estate of the administrators only. The deed was not held to be void, but eventually was admitted, by the court, after the probate records were exhibited in evidence, showing, in the opinion of the judge, that the administrators were duly empowered to sell and convey the intestate's estate.

It is an established principle, that the authority, by virtue of which an administrator is empowered to sell and convey estate, must appear on the deed of conveyance, and with such certainty, that the act done, shall visibly be warranted by the *power conferred. Rex* v. *Austrey,* K. B. *East. term,* 1817. 3 *Stark. Evid.* 1198. *Rex* v. *Croke, Cowp.* 29. 2 *Swift's Dig.* 789, 790. *Oliv. Conv.* 178. And although in some cases, it has been held, that the authority need not be referred to, when the act done is of such a nature, that it can have no operation, unless by virtue of the power; (4 *Cruise's Dig.* 240. 3 *Johns. Ch. Rep.* 551. 6 *Co.* 17. *b.* 2 *Brown's Chan. Rep.* 300. 8 *Ves.* 609. *Com. Dig. tit.* Poiar. C. 4.) yet this principle has never been supposed applicable to the conveyances made by executors and administrators. *Griswold* v. *Bigelow,* 6 *Conn. Rep.* 258.

Litchfield,
June,
1827.

Lockwood
v.
Sturdevant.

The deed of *Fenn* and *Sanford,* which, on the face of it, should exhibit an authority in the administrators to sell and convey the intestate's estate, shows no such power. It merely asserts, that they are the administrators of *Job Fenn,* late deceased, and that "by order of the court of probate" they grant the estate in question. It likewise contains a covenant, that the said *Fenn* and *Sanford* are seised of the premises "as administrators on the estate of the said deceased." All this falls far short of showing a legal authority for the sale and conveyance. The court of probate, it seems, ordered the estate to be sold; but in what manner? It does not appear, that there was an exhaustion of the personal estate of the deceased; or what amount was to be raised by the sale; or whether the estate was to be sold at auction, or by private sale; nor indeed, that any part of the probate order was complied with. The covenant of seisin as administrators, is a legal impossibility, and supplies nothing to the deficiencies before enumerated.

It is unnecessary to enter on an examination of the deed, in order to ascertain, whether *Fenn* and *Sanford* intended to grant their *own* property, or that of the *deceased;* but on a view of this instrument, signed by them, in their individual characters; covenanting that they were seised; and that they and their heirs would warrant and defend the premises; and making reservations to themselves and their heirs, I think, on fair construction, it must be considered as a conveyance of *their* estate. The case of *Griswold* v. *Bigelow* is, in no material respect, distinguishable from this.

The probate records were recurred to, in order to ascertain whether the before-mentioned administrators, were authorised to sell and convey the estate of the deceased. I have already shown, that the authority must appear on the face of the deed; and that, in the absence of it, the deficiency cannot be supplied. But the records of the court of probate adduced in evidence, recoil on the party exhibiting them. An authority given to executors or administrators to sell, is a personal trust or confidence, and must be *strictly* pursued. *Berger* & al. exr. v. *Duff,* 4 *Johns. Chan. Rep.* 368. Hence, if they transcend their authority, in any essential particular, their act is void. *Com. Dig. tit.* Attorney. 10, 11, 12, 13, 14, 15. *tit.* Poiar. C. 6. Undoubtedly, there are cases in which chancery will correct the excess, and give operation to the residue; (4 *Cruise's Dig.* 246.) but in a court of law, this is never done. The defective exe-

*Litchfield,*
June
1827.

Lockwood
v.
Sturdevant.

cution of powers is relievable in equity alone.    4 *Brown's Chan.
Rep.* 382.    1 *Madd. Chan.* 44. 358.    The records of probate
manifestly prove, that the administrators exceeded their au-
thority.    They were empowered to raise the sum of 174 dol-
lars, 99 cents ; and they have sold, and granted by deed, estate
to the amount of 188 dollars.    They did not strictly execute
the power delegated to them ; and of consequence, their pro-
ceeding is void.    The future decree of probate relative to the
surplus, cannot validate an antecedent erroneous proceeding,
nor authenticate an invalid deed.

Cases have been cited, relative to the necessity of an appeal
from the decrees of probate, in certain instances, supposed to
be applicable to this case ; but they have no bearing on any
question before the Court.    They all proceed on this unques-
tionable principle, that a decree of a court of probate, on a
matter within its jurisdiction, cannot be inquired into, and re-
versed, collaterally.    1 *Day* 170.    3 *Day* 318.    1 *Conn. Rep.*
467.    But the inquiry concerning the competency of *Fenn* and
*Sanford's* deed, has no relation to any determination of a pro-
bate court.

The above deed should have been repelled, and not admitted
in evidence.

The covenants in the mortgage deed, being valid, and brok-
en, I am next to examine the defence.

In the first place, the defendant has pleaded accord with
satisfaction ; and this plea he has endeavoured to support, by
showing a release from the mortgagor to the plaintiff, of the
mortgaged premises, and the delivery up of the note described
in the condition of the mortgage deed.    That this extinguish-
ed the debt, is not disputed ; but it is still a question, whether
the mortgage title remains in force, notwithstanding ; and of
consequence, the covenants to secure it.    The case of *Bald-
win* v. *Norton* & al. 2 *Conn. Rep.* 161, is, on this point, conclu-
sive.    One *Horace Baldwin* mortgaged certain premises to
*Timothy Leonard,* as collateral security to a note of 500 dol-
lars.    Afterwards, *Baldwin* (the mortgagor) mortgaged the same
estate to *Ashbel Baldwin.*    Subsequently to this, *Horace Bald-
win* released his right in the premises, to the first mortgagee,
who gave up the aforesaid note, and then *Ashbel Baldwin,* the
second mortgagee, brought his bill of foreclosure against the
alienee of *Leonard,* and claimed, that the estate was exonerat-
ed from the prior lien of the first mortgagee, by the satisfaction

of his debt. The court, however, distinctly admitting the extinguishment of the debt, adjudged, that the mortgage title remained, notwithstanding the release, and that the second mortgagee, before foreclosure, must exonerate the land from the lien existing by virtue of the first mortgage. The principle advanced was this; that the taking of the mortgaged premises for the debt, and relinquishing of the remedy on the note, was no extinguishment of the mortgage title. If the payment of the note, by a release to the mortgagee of the premises mortgaged, had annihilated the mortgage title, the precise effect, as was forcibly said by *Gould,* J., in the above cited case, would have been, to take the title from the first incumbrancer, because his debt had been paid, and at the same time, to deprive him of what he had received in payment, because his title was gone. Equal injustice will arise, in this case, if the mortgage title is considered as extinguished. The debt is paid; the release is of no value, for the want of title in the releasors; and unless the mortgage title secured by covenants remains, the mortgagor is entirely defrauded of his demand.

The above determination of the court is conformable to the established principles of the common law, and of equity.

The mortgage title, and of consequence, the covenants in the mortgage deed, were not annulled, by the *direct* agreement of the parties. *That* was pointed, solely, at the satisfaction of the mortgage debt. If, then, the title is extinguished, it must be, by operation of law. The law applicable to this subject, is the doctrine of *merger ;* and, as a general rule, it must be admitted, that whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated, or in the law phrase, is said to be *merged,* that is, sunk or drowned, in the greater. But to this rule, there is an exception, where justice and general convenience require both the lesser and greater title to be consistent. Thus, a man may have in his own right, both an estate tail and a reversion in fee, and the former shall not merge in the latter. 2 *Rep.* 61. 3 *Rep.* 74. It was necessary to establish this doctrine, or estates tail, contrary to the policy of law, would be put within the power of the particular tenant, by procuring the fee, and thus barring the entail. 2 *Bla. Comm.* 178. In *Stevens* v. *Brittredge,* Sir *T. Raym.* 37. it was said, that there is no rule or case that there shall be a merger, *where the estates may stand, and the taking it so, is only to preserve the*

*Litchfield,*
*June,*
*1827.*

*Lockwood*
*v.*
*Sturdevant.*

*intention of the parties.* In the case of *Gardner* v. *Astor, 3 Johns. Chan. Rep. 53.* the principle is laid down very accurately, and with a just limitation. It is said, in this case, where the equitable and legal estate are united in the same person, the former is merged in the latter, unless it is made to appear, that he has some *beneficial interest*, in keeping the legal and equitable estates distinct; and in *Forbes* v. *Moffatt, 18 Ves. 384.* this was held to be a question of *declared*, or *presumed*, intention. If the decisions of courts of law and of chancery, on the above subject, are not altogether identical, yet the principles advanced, are nothing more than the legal doctrine applied to estates tail, with a reversion in fee, in the same person, and are embraced by the decision in *Baldwin* v. *Norton.*

To prevent the merger of the less estate into the greater, or of an equitable into a superior legal title, when both are vested in the same person, as has been shown, there must be a good reason; and such an one exists in the present case. Mortgage deeds generally, if not universally, are secured by covenants of title; and the equity of redemption is extinguished, by release or foreclosure. In the event of a release from the mortgagor, it cannot be presumed to have been the intention of the parties, to extinguish the mortgage title; and in both events, of release and foreclosure, it would be unjust and inconvenient to hold this as legal doctrine. The title to the estate may be found fatally defective; and of this the case under discussion is a full illustration. That the debts secured by the mortgage should faithfully be paid, was the intention of both parties; and to this end, the release was executed, and the note given up. The mortgage title, guarded by covenants, is the plaintiff's only security; and it would be flagrantly unjust, and in opposition to general convenience, to hold, that the title by mortgage should merge, and the plaintiff be remediless. Upon the same principle, on decree of foreclosure, the mortgagee would be without remedy, if his title should prove defective.

The defendant's plea of payment, is wholly destitute of support. A debt is paid, when the contract is performed, pursuant to the stipulation made. But, if on an agreement, something collateral is received in satisfaction, although the demand is extinguished, the debt, technically speaking, is not *paid*.

The jury were directed, if they found the issues for the plaintiff, to give him damages, to the amount of the consideration

received for the five sixth parts of the four acres and three quarters of an acre included in the mortgage, of which the grantors were not seised in fee. It probably did not occur to the judge, at the time the charge was given, that *John Sturdevant*, deceased, was seised of an estate for life in the premises, and that thus far the plaintiff had no cause of complaint. In the estimate of damages, the value of the life estate ought to have been deducted.

*Litchfield,*
June,
1827.

Lockwood
*v.*
Sturdevant.

For the reasons above expressed, I advise a new trial.

The other judges were of the same opinion.

New trial to be granted.