SENECA SOLOMON *vs.* JOSEPHUS WIXON.

A court of probate may infer that a person named in a will as an executor declines the trust, from his conduct after notice of his appointment, without any formal communication from him to that effect.

Where the record of the court of probate found that such person had "neglected and refused to appear and accept the trust," and, on such record being offered in the superior court as evidence that such person had declined the trust, it was claimed that the same was insufficient for that purpose as it did not appear that he had ever been notified of his appointment—but it did appear by the will and the probate records that he was a son of the testator and a legatee under the will, and that the will had been proved by the other executor, who at once proceeded with the settlement of the estate, and also appeared that since that time the period limited by law for the proof of wills had expired and he had never appeared to claim the office or to interfere with the settlement of the estate by the other executor,—it was held that he must be regarded as having refused to act after full knowledge of his appointment.

Where a will, naming two persons as executors, empowered the "executors" to sell real and personal estate, "as they should think best," to pay certain legacies given by the will, and one of the executors declined the trust, and the other, after proving the will, conveyed certain real estate of the testator

* *Robinson* v. *Mason, ante* p. 270.

by a deed running thus: "I, L. G., executor of the last will of S. G., by virtue of power given to me by said will to make sale, as to me shall appear best, to pay the legacies named in said will,"—it was held that the power to convey was sufficiently set forth, and that, under the statute which authorizes a remaining executor to convey alone under such a power where his co-executor has declined the trust, the deed might properly express the power to convey as residing in him alone, and that the deed was not defective in not showing that the legacies were due and what amount remained unsatisfied.

The case of *Lockwood* v. *Sturdevant*, 6 Conn., 373, in its relation to this point, has been overruled by later decisions and is no longer of authority.

TRESPASS, *qu. cl. fr.* Both parties claimed title to the *locus in quo* and to be in lawful possession. The plaintiff claimed under a deed from the executor of Selah Gage, of South East, in the state of New York, who, it was admitted, died seized thereof in the year 1846. The defendant claimed title by a conveyance from the heirs at law of the said Selah. The land was situated in Danbury in this state. The plaintiff, on the trial upon the general issue, closed to the court, with notice of the title claimed by the defendant, offered in evidence a copy of the will of Selah Gage, the part of which material to the present case was as follows : " I do hereby empower my executors to sell both real and personal estate, as they shall think best, to pay the legacies, and to give a good and lawful conveyance. I appoint my two sons, Thomas and Levi, my executors." . The previous part of the will had given sundry legacies to his wife and daughters, and the remainder of his estate to his three sons, Thomas, Levi, and Selah.

The material part of the executor's deed, under which the plaintiff claimed title, was as follows: " To all people, &c. Know ye that I, Levi Gage, of, &c., executor of the last will and testament of Selah Gage, late of, &c., deceased, by virtue of power and authority given to me by the said Selah Gage in his last will and testament, for a more equal distribution of his estate, to make sale of and convey so much of the real and personal estate of the said Selah Gage, as to me, the said executor, shall appear best, to pay the legacies

mentioned in said last will and testament, and to make good and sufficient bargains and sales thereof to the purchasers, their heirs and assigns, in consideration of the sum of eight hundred dollars to me as said executor paid by Seneca Solomon of, &c., the receipt whereof I do hereby acknowledge, I have as said executor granted, bargained, sold and conveyed, and do hereby grant, bargain, sell and convey, to the said Seneca Solomon, his heirs and assigns forever, a certain tract of land situate in said Danbury and described as follows:      *      *      *      *      To have and to hold the said granted and bargained premises to him, the said Solomon, his heirs and assigns, to his and their use and behoof; and I, the said Levi Gage, do for myself, my heirs, executors and administrators, covenant with the said Solomon, his heirs and assigns, that the said Selah Gage died seized of the granted premises, and that they are free from all incumbrances done or suffered by me; and I covenant, for myself, my heirs, executors and administrators, to warrant and defend the same to the said Solomon, his heirs and assigns, against all persons claiming by, from or under me. In witness whereof, I have hereunto set my hand and seal, this 15th day of April, 1857.

LEVI GAGE, Executor. [L. S.]"

In connection with this deed, for the purpose of showing that Thomas Gage, the other executor named in the will, had declined the trust, the plaintiff offered in evidence the following record of the court of probate of the district of Danbury, in which court the will was proved on the 7th day of October, 1846.

"At a court of probate holden at Danbury, within and for the district of Danbury, October 7th, A. D. 1846: Levi Gage, one of the executors named in the last will and testament of Selah Gage, late of South East, Putnam County, New York, deceased, which said deceased left real estate within this probate district, having this day appeared in court, accepted said trust and given bonds according to law for a faithful discharge of his duties; and Thomas Gage, the other executor named in said will, having neglected and refused to appear

and accept said trust and give bonds according to law; this court limits and allows six months from this date, for the creditors of said estate to exhibit their claims against said estate to the said Levi Gage, Executor, &c., &c." The plaintiff also offered evidence to show that some of the legacies in the will were unpaid, and that the sale of the lands was made for their payment. The defendant objected to the admission of the deed as evidence of title in the plaintiff, on the ground that by the will the power to sell real estate was given to the executors, and could not be exercised by one of the executors alone, especially while both were living, and objected also on other grounds appearing on the face of the deed and records.

The court was of opinion that the deed was defective, and that the papers produced in evidence by the plaintiff did not furnish proof of title in him, and therefore, upon the question of title, rejected the deed from consideration; but admitted the papers in evidence, so far as they might tend to explain the acts of the plaintiff in connection with the premises, and might show the character of what were claimed to be acts of possession by him.

The court having found the issue for the defendant, the plaintiff moved for a new trial on account of the rejection of the evidence.

*Ferry* and *Taylor*, in support of the motion.

1. The statute expressly authorizes the remaining executors to sell, where a part of the executors have declined to act, in all cases where lands are directed to be sold by executors for the payment of debts or legacies. Rev. Stat., tit. 29, § 17. From the time of Lord Coke, where one executor renounced the other could sell. Coke Litt., 113 a. *McIntyre v. Morris,* 14 Wend., 90. 1 Wms. Exrs., 168. 1 Swift Dig., 449. *Ayres v. Weed,* 16 Conn., 291. And if one executor can convey, he may properly describe the power as residing in him alone, and need not detail the facts pertaining to the vesting of the authority in him alone. Whatever might be necessary at common law, yet, under our statute, expressly

giving him power to convey alone, he may simply state that he has that power under the will.

2. But it is claimed that it does not sufficiently appear that Thomas Gage declined to act as executor. The court of probate finds that he " neglected and refused to appear and accept the trust," which is equivalent to a finding that he declined the trust. And this finding is final. But it is said that it does not appear that he was ever notified of his appointment as executor, and that, if he had no notice, his neglect to appear and accept the trust would not be evidence of a refusal to accept it. It does however appear that he was a son of the testator and a legatee under the will—that the will was proved by the other executor, and that the settlement of the estate was in progress. From these facts the court might well infer that he had notice of his appointment. *Baldwin* v. *Porter*, 12 Conn. 473.

3. It is again said that the deed is defective in not setting out the fact that the legacies were due, and to what amount, and that it was necessary to sell the land to pay them. But the will gives the executors power to sell at their discretion, for the purpose of paying legacies, and consequently, whenever they sell, it will be regarded as evidence that in the exercise of their discretion they regarded it as necessary. *Watson* v. *Watson*, 10 Conn., 77. *Howard* v. *Lee*, 25 id., 1.

*Averill* and *White*, contra.

1. At common law, a power conferred upon two or more executors to sell real estate, must be executed by all.

2. Although, by statute, when part of the executors refuse to act, or may die before the sale, the surviving executors, or those who accept and act, may sell the same, yet some sufficient evidence must appear of their refusal; and it must appear of record or otherwise, that the party refusing to act had at least received notice of his appointment. In this case it does not appear that Thomas Gage had ever been notified of his appointment. The mere recital in the probate record of the fact that he had neglected to appear and accept the trust is not enough. *Clinefelter* v. *Ayres*, 16 Ill., 329.

3. The power so given was a mere naked power. The estate is not given to the executors with *directions* to sell, but they are *empowered* to sell. The executors, so far as the power is concerned, are to be treated as mere strangers. And it does not anywhere appear that Thomas Gage ever refused to join in the conveyance, or was ever asked to assent to the same, or knew that such conveyance was intended to be made.

4. The power to sell must be strictly pursued. The deed from Levi Gage to the plaintiff is defective,—1st. Because the will empowered the *executors*, to wit, Thomas and Levi, to sell as *they* should think best, to pay legacies. It did not empower *Levi* to sell *alone*, and yet the deed states that " I, Levi Gage, executor, by virtue of power and authority given to *me*, &c." No such power was conferred upon him by the will. 2d. Because the deed does not state, as it should have done, all the facts necessary to give to one of the executors power to sell, viz. : that Thomas had refused to act as executor, and had refused to unite with Levi in the sale and conveyance of this property, and that Levi at the time was in fact the sole acting executor. 3d. Because it does not appear by the deed that the legacies were yet due or payable, or that the sale of this property was necessary to pay legacies; nor even that the sale was made for the purpose of paying legacies. There had been no settlement with the court of probate of the executor's account, and it does not appear what funds of the estate were at the time in the hands of the executors, nor how much money was required to pay any unpaid legacies. *Lockwood* v. *Sturdevant*, 6 Conn., 373. The case of *Watson* v. *Watson*, 10 Conn., 77, does not conflict with this view.

5. The plaintiff has had the full benefit of the deed and all the other papers offered in evidence. They were admitted so far as they might tend to explain the acts of the plaintiff in connection with the premises, and to show the character of what were claimed to be acts of possession by him. In the face of the evidence so admitted, and all the other evidence in the case, the court has found the issue for the defendant. Had the evidence been admitted to show

title in the plaintiff, the result must still have been the same He failed to show possession in himself, which was necessary to his recovery. 3 Stark. Ev., 1435, 6. 1 Chit. Pl., 162. *Wheeler* v. *Hotchkiss,* 10 Conn., 225. *Chatham* v. *Brainard,* 11 id. 60. *Payne* v. *Clark,* 20 id., 30.

PARK, J. On the trial of this case in the court below, various objections were made by the defendant to the validity of a certain deed offered in evidence by the plaintiff, for the purpose of proving title in himself to the premises in dispute.

It appears that in the last will and testament of one Selah Gage, deceased, his two sons, Thomas and Levi, were named as executors, with power to sell certain real and personal estate, to pay certain legacies given in the will; and the deed in question was executed for the purpose by Levi alone, as sole executor of the will. Hence arises the controversy in the case.

The first question is, whether the records of the court of probate furnish sufficient evidence to justify that court in finding that Thomas Gage refused to accept his appointment as executor.

It was decided by this court in the case of *Ayres* v. *Weed,* 16 Conn., 291, that while it was the usual course for those declining to act as executors or administrators, to signify such refusal by a written communication to the judge of probate to that effect, still, in cases where this is not done, the fact of refusal may be inferred from circumstances or proved by any proper evidence; and such circumstances or evidence appearing on the records of the court, it is sufficient. The records of the court of probate show that Thomas Gage neglected to appear before that court for the purpose of becoming qualified to act as executor; but the claim is, that it does not appear from those records that he had at any time been apprised of the fact of his appointment as executor, and therefore his refusal to accept the trust can not be inferred from the fact of his non-appearance before that court. But the records show that Thomas Gage was a son

of Selah Gage, and was likewise a devisee and legatee in the will of his father; and when we take into consideration that a period of time necessarily must have elapsed between the death of the father and the probate of the will, it is diffi- cult to believe that the son, under such circumstances, was ignorant of the contents of the father's will. Besides, subse- quent events clearly prove that Thomas Gage refused to accept the trust; for the records in question further show, that during all the period of time allowed by law for the pro- bate of wills, which had intervened before the giving of the deed in question, Thomas Gage never appeared before that court for the purpose of becoming qualified to act as execu- tor; and it can hardly be said that, during all this period of time, and that too when the estate was in course of settle- ment, he remained ignorant of his appointment as executor. These facts appearing on the records of the court of probate, we deem them sufficient.

It is claimed in the second place that the will of Selah Gage empowered Thomas and Levi, merely as individuals, to sell, and consequently an attempted sale by one, without the co-operation of the other, was wholly nugatory. We do not so understand the will. The expression is, "I do hereby empower my executors to sell both real and personal estate, as they shall think best, to pay the legacies, and to give a good and lawful conveyance;" and in a subsequent and distinct clause in the will he appoints his executors. We think it is evident from the language used, that the testator not only expected his property to be sold for the purposes named, but that the language is equivalent to a direction to his executors to sell, but the mode and extent of the sale he leaves to their discretion. The case, therefore, clearly comes within the provisions of the statute upon the subject; and consequently, when Thomas refused to act as executor, the whole duty devolved upon Levi, who had accepted the trust. Rev. Stat., tit. 29, § 17.

Again, it is claimed that the power to sell must be strictly pursued, and that the deed in question is defective because the will empowers the executors to sell, whereas it is stated

in the deed, " I, Levi Gage, executor, by virtue of power and authority given to me, &c." We see no objection to the deed in this respect. Without stopping to inquire how the common law regards the question, we are entirely satisfied that the statute already alluded to disposes of this objection. (See the statute above referred to.) The records of the court of probate show that Levi Gage was the sole acting executor at the time the deed was given, and in view of the statute he might well use the language of the deed in describing his authority. Such was its legal effect, under the circumstances. He does not pretend to quote the language of the will, but he merely describes his authority derived from the will in his own language. It was not necessary that he should state the facts whereby he became, in law, the sole acting executor. They are a matter of record in the proper place, and that is sufficient.

Again, it is claimed that the deed is defective, because it does not show that the legacies were due—that the sale of the property was necessary for the payment of legacies—that the sale was made for the purpose of payment—and what amount remained unsatisfied ; and the case of *Lockwood* v. *Sturdevant*, 6 Conn., 373, is relied upon in support of this claim.

It might well be questioned whether the case referred to supports the doctrine contended for by the defendant. The principle decided in that case is, that the authority, by virtue of which an administrator is empowered to sell and convey estate, must appear on the deed of conveyance, and with such certainty that the act done may be seen to be warranted by the power conferred. The authority to sell in that case came from the court of probate, and in pursuance of an order granted to that effect; and the deed was held void because it did not detail the reasons on which the court of probate proceeded in granting the order. In this case the authority to sell comes from the will of Selah Gage, and the executor in the deed of conveyance refers with particularity to the will, and sets forth at length the authority there conferred. But the case of *Lockwood* v. *Sturdevant* was substantially overruled by the case of *Watson* v. *Watson*, 10

Conn., 77, and the recent case of *Howard* v. *Lee*, 25 Conn., 1, and is no longer authority.

The will of Selah Gage leaves it to his executors to decide in what manner and to what extent they will sell the real and personal estate to pay the legacies given in the will, and the mere fact that a sale was made shows that it was deemed necessary, and to the extent of the sale. It is true the executor does not state in direct terms that he makes the sale for the purpose of paying the legacies, but he does what may be regarded as equivalent—he recites his authority, and then proceeds to make the conveyance ; and so long as it is not denied that the sale was in fact made for the purpose of paying the legacies, we deem it sufficient.

We have now answered the various objections made by the defendant to the validity of the deed in question, and the conclusion is, that the objections are without foundation, and that the deed should have been received in evidence by the court, for the purpose for which it was offered by the plaintiff.

In this state of things the defendant insists that the plaintiff, on the trial in the court below, received the full benefit of the deed upon the questions at issue, and therefore a new trial of the case should not be granted, because substantial justice has been done. He claims that the question in the case was in regard to the possession of the premises by the plaintiff, and the deed being received in evidence by the court so far as it might explain the character of what were claimed to be acts of possession by him, he therefore received no harm from the ruling of the court. But the finding of facts shows that both the parties claimed title and possession of the premises, and it is easy to see that the title might have an important bearing on the question of possession, beyond the mere purpose for which the court received the evidence.

For these reasons we advise a new trial.

In this opinion the other judges concurred.

New trial advised.