*Hartford,*
June, 1834.

Watson
*v.*
Watson.

WATSON and wife *against* WATSON.

Though in the conveyance of land by an executor or administrator, under an order of the court of probate, his authority must appear on the face of the instrument ; and though the legal necessity of the sale must appear on the face of the order ; yet where these requisites exist, it is not necessary to specify in the deed the grounds on which the court of probate proceeded in making the order.

Therefore, where the grantor described herself in the deed as " executrix of the last will and testament of *E. B.*," and stated her authority thus : " in conformity to an order of the court of probate for the district of *H.*, dated, &c., me thereunto directing and empowering ;" and on recurrence to such order, it appeared to be founded on a finding of the court of the amount of debts and charges allowed, and of the insufficiency of the personal estate ; it was held, that such deed was valid.

The right of the wife in her land, is not barred, by fifteen years adverse possession, during the coverture, but is saved, by the proviso of the statute of limitations ; and therefore, an action of ejectment, in the name of the husband and wife, to recover such land, may be sustained, notwithstanding such adverse possession.

THIS was an action of ejectment ; tried at *Hartford, September* term, 1833, before *Church,* J.

The plaintiffs claimed to have proved a title to the lands described in the declaration ; and that the defendant was in possession thereof, at the commencement of the suit. It was admitted, that the title to these lands was once in *Ebenezer Bliss,* who died in the year 1786, having devised them to *John Bliss,* who died soon afterwards, intestate, leaving *Ann Watson,* one of the plaintiffs, his sole heir.

The defendant claimed, that after the death of *Ebenezer Bliss* and *John Bliss, Anne Bliss,* the widow and executrix of *Ebenezer,* in the year 1786, obtained an order from the court of probate of the district of *Hartford,* in which the lands in question lay and the testator last dwelt ; and that by virtue of that order, she sold and conveyed such lands to *John Watson* sen. ; and that the defendant held under his will. The defendant further claimed, and offered evidence to prove, that *John Watson* sen. had, previous to his death, held the premises adversely, for thirty years, or more, and that the defendant had so held them, ever since.

The order of sale was as follows : " At a court of probate, holden at *Hartford,* within and for the district of *Hartford,* on

*Hartford,*
*June, 1834.*

Watson
*v.*
Watson.

the 24th day of *March* 1786, *Anne Bliss,* executrix of the last will and testament of *Ebenezer Bliss,* late of *East Wind-sor,* deceased, exhibited an addition to her account of administration of debts and charges paid and due from the estate of said deceased, amounting to 60*l.* 11*s.* 2*d.* lawful money ; which account is allowed by this court ; and there being no moveable estate to pay the same, this court doth direct and empower said executrix to sell so much of the real estate of said deceased as will raise the said sum of 60*l.* 11*s.* 2*d.* lawful money, with incident charges of sale." The following is the clause in the deed from *Anne Bliss* to *John Watson* sen., which is material in this case : " That I, *Anne Bliss,* of *East-Windsor,* executrix of the last will and testament of *Ebenezer Bliss,* late of said *East-Windsor,* deceased, for and in consideration of 62*l.* lawful money in silver, received to my full satisfaction of *John Watson* of said *East-Windsor,* do, by these presents, and in conformity to an order of the court of probate for the district of *Hartford,* dated the 24th day of *March* 1786, me thereunto directing and empowering, give, grant, bargain, sell and convey unto the said *John Watson,*" &c.

The plaintiff claimed, that this deed was not valid ; first, on account of a defect appearing on the face of it, as it did not shew the order of probate, nor any authority to sell ; and secondly, because the deed was corrupt, and was made upon a combination between the grantor aud grantee to defraud the heir of the estate; and introduced evidence to prove these facts. As to the point of adverse possession, the plaintiffs claimed to have proved, that *John Watson* sen. did not enter into possession of the lands until after the intermarriage of the plaintiffs, and after the right of entry accrued to her, and to him in her right ; and that, therefore, as one of the plaintiffs was a feme covert, she could not be affected by the statute of limitations.

The court instructed the jury, that if they should find, that the defendant, and those under whom he claimed, had held the lands in question for fifteen years after the intermarriage of the plaintiffs, and after such right of entry had accrued, they would find for the defendant, notwithstanding *Ann Watson,* one of the plaintiffs, was, during that time, a feme covert ; and that the defendant had thereby gained the life estate of her husband. The court also instructed the jury, that the deed was void, by reason of the defect apparent on its face.

The jury returned a verdict for the defendant; and the plaintiffs moved for a new trial, for a misdirection.

*Hartford,*
June, 1834.

Watson
v.
Watson.

*Sherman* and *W. W. Ellsworth*, in support of the motion, contended, 1. That the plaintiffs were not precluded from a recovery, by the statute of limitations. In the first place, the entire absence of authority to sustain the position that where the statute has run, in the case of a *feme covert*, she cannot sue for the possession of her land, is evidence that there is no such principle of the law. The case must, in *England*, and in this country, have been of frequent occurrence; but no judge or lawyer ever heard of such an objection.

In the next place, the objection grows out of the statute only; but the proviso in behalf of a feme covert is as broad as the enacting clause of the statute; and hence the statute is inoperative for the space of five years after the discoverture, though in other respects, it runs against her as much as against any one. This is obvious from several considerations.

First, if the statute did not run against her, she would be entitled to fifteen years after discoverture, as all others are. There must be fifteen years possession adverse to the *title lost;* but if she has, as is claimed on the other side, only an estate *after* her husband's life estate,—a sort of an estate in remainder or reversion,—then the adverse possession does not commence, as to *her*, until "*her* right or title first descends or accrues," which is when her husband dies.

Secondly, the statute runs against every one, but saves, to the extent of five years, certain persons, and femes covert among them. The very language is, that a feme covert, to whom, during coverture, a title has descended, shall have five years after discoverture. But what does all this mean, if, during coverture, she has no present right, title or possession? The statute virtually declares, that the right and title do accrue *to her ;* and hence, by the proviso, she has five years allowed her after coverture ends. The statute does not countenance the division of the estate; but goes wholly on the ground that a feme covert is seised and disseised. See *Jackson* d. *Beekman* v. *Sellick*, 8 *Johns. Rep.* 262. where it is held, that it is a present right of possession, and not a future estate, which is affected by the statute of limitations. If the defendant's coun-

HARVARD LAW LIBRARY

sel are right, a feme covert will lose *her* title, by five years adverse holding.

Thirdly, when the husband is turned out of possession tortiously, the *wife* is disseised, and must join him to regain possession ; but if *his* interest only is lost, she cannot join to assert his rights. It has been decided in the superior court, that husband and wife must unite in an action of ejectment to recover her land. The freehold never is in the husband, but in the wife. It must be alleged, that she is seised, and he in her right.

Fourthly, her interest is settled, by a suit during coverture.

Fifthly, the husband can be tenant by the curtesy ; but it is a settled point, that he can be tenant by the curtesy only where his wife died seised. 2 *Bla. Com.* 130. *The King* v. *Great Farringdon,* 6 *Term Rep.* 679.

Sixthly, if an estate is given to baron and feme, the survivor will take the whole.

Seventhly, if the wife is attainted, the whole estate is forfeited and lost ; and her heirs inherit from her as *dying seised ;* this being necessary in *England.*

The argument of the defendant's counsel is not founded in fact. They say, the husband and wife has, each, a separate estate : his may be alienated, by sale or the levy of an execution. But as the title, in this case, is lost only by the statute, and not by the act of either party, it follows, that if the proviso in the statute takes the case out of the statute, the title is not lost ; it is not alienated ; it is not taken on execution ; it is her estate, which she needs for her support, and not the less so, for being married ; and the statute declares, that adverse possession shall not run against her so but that she may sue at any time up to the expiration of the five years after she is discovert.

2. That the deed from *Anne Bliss* to *John Watson* sen. was fatally defective, and transferred no title. This point has been solemnly settled, by this Court, in the case of *Lockwood* v. *Sturdevant,* 6 *Conn. Rep.* 373. 386. ; and the law of that case is incorporated into the titles of our estates. It is unnecessary and unwise to change the law : it would be giving to one man, to-day, what is denied to another, to-morrow. But if we are to go into the merits of that decision, what is the principle asserted ? It is this ; *where a title is created by law, or an agent of the law, the authority and the manner of its exer-*

*cise are constituent parts of the title.* The judge of probate, *as such,* has no more power to sell land than the sheriff of a county or the mayor of a city. Hence a deed under his order, shews no authority. The title must shew, that he has *jurisdiction,* and that his order has been *complied with.* But his jurisdiction cannot appear but by his order; and that must stand on the title deed, or nothing appears there. The cases are numerous, in which it is held, that where rights are taken away, by an agent of the law, acting under a limited and special authority, the existence of the right in the given case and the manner of exercising it, must appear from the act itself. The levy of an execution is a familiar instance. It will not do to say, the land is set off according to law; but as the execution, which is a part of the title, shews the authority, so its levy must shew the manner of its execution.

*Hungerford* and *Toucey,* contra, contended, 1. That the plaintiffs were barred, by the statute of limitations. In support of this position, they urged the following considerations.

First, by the enacting clause of the statute, all persons are barred of their title, who do not make entry within fifteen years "next after their right or title shall first descend or accrue." This clause is general, and extends to all persons, except such as are exempted from its operation by the proviso.

Secondly, by the proviso, persons who, at the time the right of entry first descends or accrues to them, are femes covert, persons under age, *non compotes mentis,* or imprisoned, may, notwithstanding the enacting clause, make entry or bring their action after the expiration of the fifteen years, "so as" they do it "within five years" next after their disabilities have ceased.

Thirdly, all persons, of course, are barred, by the fifteen years, who do not labour under the particular disabilities mentioned in the proviso. The plaintiff *John Watson* laboured under no one of those disabilities; and, as a necessary consequence, was himself within the enacting clause, unless protected from it, by the character or quality of his estate or interest in the land, or unless his protection from it is indispensable to give effect to the proviso in favour of his wife.

Fourthly, it is difficult to understand how he is protected, in the present case, from the nature or quality of his estate or interest. It is admitted, that by virtue of the marriage, the hus-

band acquires a life estate in the real property of his wife. The use of this property he can appropriate to himself, during the coverture, in such manner as he thinks proper, either with or without her consent; or he may transfer his estate therein to another; or it may be taken for his debts.

Fifthly, it cannot be denied, that the husband may part with his life estate, by aliening it to another. Suppose, then, he should execute to another a quit-claim deed, purporting to release all his interest to a third person, neither he nor his wife would thereafter have any right of entry during the coverture. If the relessee should be evicted, he could maintain an action, in his own name, to recover possession. If it should be holden adversely to him, for fifteen years, the person so holding would acquire title to his estate.

Sixthly, in the case of such a transfer by the husband, the transfer is not by virtue of an authority from the wife, but by virtue of an interest and title in the husband; and it is clear, that he cannot transfer a greater interest than he has. It seems, therefore, to follow, that if the grantee can maintain an action of ejectment, in his own name, to recover possession, if evicted, upon the title derived from the husband, it is not upon the ground of the wife's present interest, that the husband and wife are required to join in a similar action.

Seventhly, suppose that after the husband has released all his interest, as before mentioned, he himself should enter, and evict and hold adversely to the grantee, for fifteen years, during the coverture, he would, like any other individual, acquire a title, by possession; but in case he himself should afterwards be evicted, must not the husband and wife join in the suit to recover possession? It cannot, then, be from the nature or quality of the estate of the husband, that it cannot be protected from the operation of the enacting clause of the statute.

Eighthly, is it necessary that the husband's estate should be so protected, in order to give the wife the full benefit of the proviso? There is no such necessity in point of fact; nor is any such intimated by the statute. The proviso in effect says, the wife, after the disability is removed, and after the expiration of the fifteen years, may bring her action, or make entry, as she might have done within the fifteen years, so that it be done within five years after the disability is removed; but there is no intimation that she may make entry or bring her action, after

the expiration of fifteen years, and before her disability is removed.

Ninthly, in order to determine the extent and quality of the husband's estate, we are to look at *his interest* in it ; *i. e.* we are to look at the *estate itself ;* and in doing this, we at once perceive that he has an estate for life ; (*Babb* & ux. v. *Perley*, 1 *Greenl.* 6. See also *Michell* & ux. v. *Hughes*, 6 *Bing.* 689.—19 *Serg. & Lowb.* 205.) and no reason exists why he should not lose that life estate, by a fifteen years adverse possession, which does not exist in favour of his grantee, or in favour of any particular tenant ; and that a particular tenant is ordinarily within the operation of the enacting clause of the statute, will not be denied. 2 *Stark. Ev.* 887. 1 *Pick.* 327.

Tenthly, whether the statute be considered as running against the wife during the coverture, or against the husband only, and after the disability is removed, commencing against the wife and attaching at the expiration of five years, would seem to be very immaterial. If the husband thinks proper, in the name of himself and wife, to recover possession, during the first fifteen years of the adverse possession, he can do it ; if not, the legislature has thought proper to allow five years for the wife after the disability. It was competent for the legislature, if it thought proper, to bar the right of the wife, for the negligence of the husband ; and it is believed to be no more than a common occurrence—*e. g.* where the statute commences running before the marriage takes place.

Lastly, the necessity of the wife's joining in the suit to recover possession, does not grow out of a joint right to the immediate possession of the property, but out of the peculiar relation subsisting between them, and a regard to her reversionary interest.—The cases of *Doe* d. *Wright* v. *Plumptre*, 3 *Barn. & Ald.* 474. (5 *Serg. & Lowb.* 349.) and *Hulm* v. *Heylock*, *Cro. Car.* 200. support the general proposition in discussion.

2. That the deed from *Anne Bliss* to *John Watson* sen. was good. In support of this position, the following considerations were urged. In the first place, it was remarked, it does not necessarily appear, from the report of the case of *Lockwood* v. *Sturdevant*, 6 *Conn. Rep.* 373. that the court decided a deed in this form to be invalid. There were other points involved in that case sufficient to warrant the result to which the court came ; and although the other judges concurred with the

Chief Justice in the general result, it does not appear, that they concurred with him in his views in regard to a more extended recital in that deed.

But secondly, allowing that the court decided the point, the decision cannot be sustained by principle or authority. None of the authorities cited by the late Chief Justice sanction his conclusions. In the case of *Griswold* v. *Bigelow*, 6 *Conn. Rep.* 258. the point did not even arise ; and the ground upon which the court refused a new trial, was, that the deed only purported to convey the administrator's interest, and not that of the deceased. The rule laid down in 3 *Stark. Ev.* 1197. in support of which *Rex* v. *Austrey* is cited, is, "that wherever a power is given to particular persons to do a written act, in a particular manner, or under particular circumstances, whether it be to parish officers or magistrates, as to grant certificates, under which, if duly executed, other persons, especially public officers, are bound to act, or to grant warrants, or make orders, their authority must appear on the instrument itself." Within the principle here laid down is the decision in the case of *Rex* v. *Croke*, *Cowp.* 26. 29. and very many decisions in this country ; but they are inapplicable to this case.

Thirdly, the recital of the proceedings before the probate court would be entirely useless, as the recital is no proof of the facts recited. *Williams* & al. v. *Peyton's* lessee, 4 *Wheat.* 77. It differs essentially from the case of an officer's return ; as an officer's return is *prima facie* evidence of the facts it states, and is receivable in court as such. See *Innman* & al. v. *Jackson*, 4 *Greenl.* 237. much in point.

Fourthly, it is not the duty of the administrator or executor to enquire into the propriety of the order's being issued. If it were, it would be necessary for him to examine all the preliminary proceedings of the probate court in regard to the settlement of the estate ; and it would be equally necessary that those proceedings should be detailed in his deed, as that the order should be recited.

Fifthly, although the executor conveys by virtue of an authority, it is well settled, that there is no necessity for reciting it ; a reference to it being sufficient. See 3 *Stark. Ev.* 1199. 4 *Cruise's Dig.* 240. and *Innman* & al. v. *Jackson* above cited.

Sixthly, the form of the deed, in this case, is believed to be,

in all respects, in exact accordance with the form sanctioned by immemorial and universal usage in this State.

*Hartford,*
*June, 1834.*

————

Watson
*v.*
Watson.

DAGGETT, Ch. J.   The plaintiffs' title is derived from *John Bliss,* who died intestate, leaving *Ann Watson,* one of the plaintiffs, his sole heir.   *John Bliss* obtained the land, by devise of his father, *Ebenezer Bliss,* in whom the title was vested until his death, as is agreed by the parties.   The defendant insists, that his title is well derived from the will of the late *John Watson* sen., who became well seised, by purchase of and a deed from *Anne Bliss,* executrix of the last will and testament of the aforesaid *Ebenezer Bliss,* by virtue of an order of the court of probate of the district of *Hartford,* which, at that time, embraced the demanded premises.

The plaintiffs insist, that this deed is not valid ; first, because of a defect appearing on the face of it, as it did not show the order of the court of probate, nor, of course, any authority to sell.   They, therefore, contend, that the demanded premises passed under the will of *Ebenezer Bliss* to *John Bliss,* and thence came, by descent, to the plaintiff, *Ann Watson,* wife of the other plaintiff, *John Watson.*   This position brings directly into view the question, whether the deed of *Anne Bliss,* the executrix of *Ebenezer Bliss,* to *John Watson* sen., be a valid instrument of conveyance.

The deed expresses her authority thus : " I, *Anne Bliss,* of *East- Windsor,* executrix of the last will and testament of *Ebenezer Bliss,* of said *East- Windsor,* for and in consideration, &c., do, by these presents, and in conformity to an order of the honorable court of probate of the district of *Hartford,* dated the 24th day of *March,* 1786, me thereto directing and empowering, give, grant, bargain, &c. to *John Watson,* &c."

The objection to this deed rests on the authority of *Lockwood* v. *Sturdevant,* 6 *Conn. Rep.* 373. and the opinion of the court, as given by the late Chief Justice, as expressed in *p.* 386. of the same case.   It is there said, " that the authority, by virtue of which an administrator is empowered to sell and convey estate, must appear on the deed of conveyance, and with such certainty that the act done shall visibly be warranted by the power conferred."

The first case cited in support of this position of the learned Chief Justice, is *Rex* v. *Austrey,* K. B. *East.* T. 1817. 3

*Hartford,*
*June, 1834.*

Watson
*v.*
Watson.

*Stark. Ev.* 1198.   In 1 *Phill. Ev.* 416. the same principle is advanced, and the same authority referred to.   The doctrine there laid down, is, " that wherever a power is given to particular persons, to do a written act, in a particular manner, or under particular circumstances, whether it be to parish officers or magistrates, as to grant certificates, under which, if duly executed, other persons, especially public officers, are bound to act, or to grant warrants, or make orders, there, their authority must appear on the instrument itself."   " Hence where the question was, whether a certificate signed by two church-wardens and one overseer, but having only two seals, was a legal and valid certificate, under the statute of 8 & 9 *W.* 3. *c.* 30. the court held, that the certificate had not been properly executed.   And with regard to the execution of powers created by private authority, it is a settled rule of law, that all the circumstances required by the creators of the power, must be observed."   Thus, where a submission required that the award should be under the hands and *seals* of the arbitrators, an award signed but not sealed, was holden void.   *Thaire* v. *Thaire, Palm.* 109. To the same effect are the cases of *Doe* d. *Mansfield* v. *Peach,* 2 *Mau. & Sel.* 576. and *Wright &* al. v. *Wakeford,* 4 *Taunt.* 214. also *Moodie* v. *Reid &* al. 7 *Taunt.* 355.

Of precisely the same character is the next case noticed in *Lockwood* v. *Sturdevant, viz. Rex* v. *Croke, Cowp.* 39. where Lord *Mansfield* says, " this is a special authority, delegated, by act of parliament, to particular persons, to take away a man's property against his will ; therefore, it must be strictly pursued, and must appear to be so upon the face of the order."

The other authorities cited are only the forms of deeds given by executors or administrators in 2 *Swift's Dig.* 789—90. & seq.

These cases, it is not difficult to see, fall far short of authoritative decisions in support of the point to which they are adduced.   They indeed prove the general doctrine, that where a power is given to particular persons to do a certain act in a particular manner, their authority must appear on the instrument ; and if it do not so appear, the act is void.   Let us apply this principle to the case under consideration.

This grantor, in the deed in question, declares herself to be executrix of the last will and testament of *Ebenezer Bliss ;* and that she sells this land in conformity to an order of the

court of probate, dated the 24th of *March*, 1786. Reference is made in the deed directly to the order; and by this order it appears, that the court of probate, upon the exhibition of her account as executrix, found, that there was due from the estate of the deceased 60*l.* 11*s.* 2*d.* ; and that there was no moveable estate to pay the same; and it therefore authorizes her to sell so much of the real estate as would raise that sum, with charges of sale. All admit, that this is a state of things, in which it is the duty of the judge of probate to order a sale of real estate; and the record shows, that he made the order accordingly. See the statute then in force. *Stat.* 269. *tit.* 60. *s.* 22. (*ed.* 1808.)

Why then, is not this deed valid? It is objected; because it should set forth the *reasons* why the court of probate ordered the sale. Suppose it had set them forth; that would not have furnished *proof.* *Williams* v. *Peyton*, 4 *Wheat.* 78. *Inn-man* v. *Jackson*, 4 *Greenl.* 237. 248. It must appear on the records of the court of probate, that a sale of real estate was necessary, to give validity to the order. This point was decided in *Wattles* v. *Hyde* & al. 9 *Conn. Rep.* 10. " It is essential," say the court, in that case, " to the validity of an order of probate for the sale of land, that it should appear on the face of the order, that the debts and charges allowed exceed the personal estate." The same doctrine was promulged in *Griffin* v. *Pratt*, 3 *Conn. Rep.* 513. ; but in no case, except in *Sturdevant* v. *Lockwood*, has it been said, that the deed must detail the *reasons* on which the court of probate proceeded. Nor, in my opinion, can this be necessary. The executor or administrator states the character in which he acts; the order he receives; and when that order is seen, it appears, that the court of probate was fully authorized to make it, by the statute. This, it is believed, has been the practice generally; and if the principle advanced in *Lockwood* v. *Sturdevant* were to prevail, many titles under executors and administrators' sales would be shaken. I cannot, therefore, give my sanction to the principle, in its extent. What influence the fact, that the order was not strictly pursued, as is alleged in *p.* 387., had on the court, is not known; nor is it known whether the whole court concurred in the opinion with the Chief Justice; but I am well satisfied, that the deed must be declared valid, this objection notwithstanding; though it was certainly proper, that the

Watson
*v.*
Watson.

judge at the circuit should have deemed himself bound by the decision referred to.

Another objection to this deed was made on the trial, *viz.* that it was corrupt, and was made upon a fraudulent combination between the grantor and grantee. The deed being declared invalid, for the reason given above ; and it also being established by the court below, that the statute of limitations was a bar to this action ; it became unnecessary to consider and decide the facts arising out of the alleged corruption in the deed.

This brings me to consider another objection made to the recovery of the premises, by the plaintiffs. When the right and title of *Ann Watson* accrued, she was a feme covert; and she and her husband had suffered more than fifteen years to elapse. He is, therefore, barred, by this adverse possession, by force of the statute of limitations ; (*Stat.* 309, 10. *tit.* 59. *s.* 1.) and, of course, this action cannot be sustained. In my view, this objection is not sustainable. I suppose, that though the statute would run to bar the husband, yet as the wife is the real and substantial owner, she is not barred, but her rights are saved by the proviso. No decision directly bearing on this point, is within my knowledge. Resort, therefore, must be had to the general principles of law, and to the particular provisions of the statute relied on.

A husband and wife must join in an action for the recovery of the land of the wife. *Com. Dig. tit.* Baron and Feme. V. X. also *tit.* Pleader. 2 A. 1. *Weller* & al. v. *Baker,* 2 *Wils.* 423, 4. 1 *Bulstr.* 21. 1 *Chitt. Plead.* 63, 4. (5th *Am. ed.*) The husband, in such case, is joined for conformity, and because she cannot, being a married woman, sue alone. The husband and wife, in such case, declare on a seisin in them both, and allege that his seisin is in right of his wife. There are many cases where she *may* or *may not,* join ; but in ejectment for her land, she *must* join. If he die pending a suit in which she *must* join, as on a chose in action given to her before marriage, and in many other cases, the action survives to her. Hence, it is apparent, that her interests and rights are directly involved.

It is true, that he is entitled to the use and occupation during coverture ; and if he have issue by her, which could have inherited, and the wife be dead, he becomes tenant by the curtesy. It is also clear, that on a dissolution of the marriage,

*Hartford,*
June, 1834.

Watson
*v.*
Watson.

by divorce, he being the guilty party, the wife becomes revested with all her lands, though they may have been conveyed by him, or taken for his debt, by execution against him, during the coverture. *Starr* v. *Pease* & al. 8 *Conn. Rep.* 541. and the cases there cited. In the case of *Wheeler* v. *Hotchkiss, post*—this doctrine is extended to a wife, who had obtained a divorce, having had children, and he thereby being, as it is termed, tenant by the *curtesy initiate.* These principles originate in the marriage relation, and illustrate the nicety which subsists between these correlates, and at the same time, do not impugn the idea, that her interest in the real estate remains ; and, by his marital rights, he is entitled to the use and improvement of it. Their interests are not separate, in such a sense, that he can be barred of a recovery, without directly affecting her substantial rights.

It is believed, that the statute in question is not opposed to, but upholds, these principles. By the enacting clause, no person is allowed a right of entry, but within fifteen years after such right accrues. The right in question did accrue, more than fifteen years before this action was brought. Hence, did the statute end here, the plaintiffs would be barred. But the rights of certain persons who are not *sui juris*, and are incapable of prosecuting their actions, are, by the proviso, excepted from the operation of the enacting clause. Persons under twenty-one years of age, femes covert, and those who are *non compotes mentis*, or imprisoned, when the right first descended or accrued, may, within five years after the disability is, or shall be removed, bring their actions, notwithstanding the lapse of fifteen years. The whole time of the continuance of the disability is expunged ; but as this time may be long, and therefore embarrassing, they shall be allowed only five years after it shall be removed. The statutes of limitations are founded upon the idea, that a person who has rights will assert them ; and that he shall not be presumed to neglect the pursuit of property belonging to him, for fifteen years ; as well as upon the idea that deeds and other evidences of property may be lost. They rest also on principles of public policy. *Interest reipublicæ ut sit finis litium.*

It is said, however, that as the husband is not within the proviso, if he is permitted to recover, it will be in direct violation of the statute. This may be true ; but what right had

he, or what right does he now, in connection with his wife, seek to recover ? A mere incidental right, growing out of the coverture. What right does she seek to recover ? Her real estate, of which she has been deprived, without any laches or fault on her part. Had she been insane, or imprisoned, or an infant, she would have been no more legally incapacitated, than by coverture ; for her will and power are controuled by her husband. She has been *sub potestate viri.*

Again, it may be said, that either of the other disabilities mentioned in the proviso, while it existed, if the fifteen years had elapsed, would equally prevent the true owner of the property from asserting his right ; for the ground taken is, that if the statute has run for fifteen years, a bar is created, which will operate until the disability is removed ; and that then five years shall be allowed to assert the right. Can it be, then, that if a title should accrue to an infant of a year old, to an estate, being holden adversely, he could not bring an action after the lapse of nineteen years, but must wait until he arrive at twenty-one ? The reasonable doctrine would seem to be, that at any time during the existence of the disability, his right might be asserted ; and so I think the law is.

But the counsel for the defendant rely on the authority of adjudged cases. *Doe* d. *Wright* v. *Plumptre, 3 Barn. & Ald.* 474. (5 *Serg. & Lowb.* 348.) *Hulm* v. *Heylock, Cro. Car.* 200. The first named of these cases, was decided on the authority of the last. They both originated where lands were claimed after a fine levied. If we look, for a moment, at the operation of a fine, we shall be satisfied that these cases cannot apply. It is explained in 2 *Bla. Com.* 354—7. A fine is a species of conveyance, which passes the whole right, and bars all persons, who do not bring their action in five years. The statute of 4 *H.* 7. of fines, enures and operates by way of bar to the *right of property ;* but the statute of limitations is only a bar to the *remedy. Ballant. Stat. Lim.* 17. If there be any parallelism, in these cases, with the case under consideration, it would seem to follow, that when the statute has run and the fifteen years have expired, no action can be sustained, by any person under a disability, until the disability is removed ; which brings us to the absurdity before supposed.

A new trial must be granted, for the purpose of trying the

question of a corrupt combination in obtaining the deed. If such corrupt combination be not proved, there must be judgment for the defendant, as the facts now appear.

*Hartford,*
*June, 1834.*

Watson
*v.*
Watson.

BISSELL, J. was of the same opinion.

CHURCH, J. On the trial of this cause, in the superior court, the judge, controuled, as he supposed, by the authority of the case of *Lockwood* v. *Sturdevant*, 6 *Conn. Rep.* 373. instructed the jury, that the deed from the exetutor of *Ebenezer Bliss* to *John Watson* was void, and conveyed no title to the purchaser ; and I entirely concur in the opinion of the court now given, that the doctrine of that case, so far as it relates to the deed in question, is not law ; and that if from the other facts disclosed upon this motion, the present plaintiffs can maintain this action, a new trial ought to be granted ; but believing, as I do, that these plaintiffs cannot sustain this action, by reason of the adverse possession of the defendant, and those from whom he claims title, I am satisfied, that no new trial should be granted.

The question upon this part of the case arises under the 1st section of the statute of limitations, by which it is enacted : " That no person shall, at any time hereafter, make entry into any lands or tenements, but within fifteen years next after his right or title shall first descend or accrue to the same ; and *every person* so not entering, and his heirs, shall be utterly disabled to make such entry afterwards, &c." And by a proviso in the same section, it is provided, " that if *any person*, who hath or shall have such right or title of entry into any lands or tenements, be, or shall be, at the time of the first descending or accruing of the said right or title, within the age of twenty-one years, feme covert, *non compos mentis* or imprisoned, then such person, or his heirs, may, notwithstanding the expiration of said fifteen years, bring such action, or make such entry, as he might have done before the expiration of the said fifteen years, so as *such person* shall, within five years next after full age, discoverture, &c., or the heirs of such person, bring such action or make such entry, and take benefit of the same." The *English* statute of 21 *Jac.* I. *c.* 16. is essentially the same, only limiting the time of entry to twenty years ; but it is important to remark, that in one very material particular, our

Watson
*v.*
Watson.

statute has received a construction, which the *English* courts have not given to theirs; for although, by stat. 21. *Jac.* I. a *right of entry* is barred, by an adverse possession of twenty years, so that an action of ejectment cannot there be sustained; yet the *right of property* is not thereby lost, but may be enforced, by an appropriate action, at any time within sixty years; whereas it has been immemorially holden here, that by an adverse possession of fifteen years, the entire title is lost to the former owner, and becomes vested in the disseisor; and the acquisition of title by possession, is as well known in this state, as the acquisition of title by deed, devise or execution. 1 *Swift's Dig.* 161. In *England,* a *right of entry* is not only barred or tolled, by an adverse possession of twenty years, but also, by a disseisin and descent cast.

It is important in the construction of the statute now under consideration, as well as of all others, that every part shall be permitted to have entire effect; and I am persuaded, that the construction claimed by the plaintiffs in this case, will entirely prevent the operation of the statute upon *John Watson,* the husband, without protecting materially the rights of his wife. And on the other hand, I am convinced, that upon a reasonable construction of the statute, confirmed, as I think, both by principle and precedent, the right of *John Watson,* the husband, to the land in controversy, is lost, by the adverse possession of the defendant; and that the right of his wife, though existing, is suspended during coverture, and will revive in favour of herself, or her heirs, upon the death of the husband.

It is an elementary principle of the common law, that the husband has a freehold interest in his wife's estates of inheritance. *Co. Litt.* 305. *Reeve's Dom. Rel.* 27. 1 *Swift's Dig.* 26. 2 *Kent's Com.* 110. *Clancy's Rights of Married Women,* 161. If the husband has such freehold estate, he has a right of entry; and if so, by the explicit terms of the statute of limitations, it may and will be barred, by an adverse possession of fifteen years. To hold otherwise would be to claim the strange doctrine, that there may be a freehold estate in possession, without a seisin of it; or that there may be a seisin, without the possibility of a disseisin. It is no answer, as was suggested in argument, that the right of the husband is merely incidental to the right of the wife. The husband has something more than a mere right; he has a vested estate in

*Hartford,*
June, 1834.

Watson
*v.*
Watson.

possession. If any thing more is meant by this notion of incidental right, than that the interest or estate of the husband is created and continued *jure uxoris,* I have not been able to discover it ; and if nothing more is meant, I do not think the argument for the plaintiff is strengthened by it. The husband acquires his right to the chattels of the wife, in the same way. If a freehold estate in truth exists in the husband, no matter how it was acquired, unless it can be proved, that, unlike all other freeholds, it cannot be lost by disseisin.

The husband and wife are jointly seised of the wife's freehold estates of inheritance in her right, the legal seisin being essentially in both ; and yet the separate legal existence of the wife being suspended, during coverture, the husband has the *sole seisin in fact. Co. Litt.* 113. *a.* note *R. Polyblank* v. *Hawkins, Doug.* 329. 1 *Bla. Com.* 442. *Clancy* 162. *Michell* & ux. & al. v. *Hughes,* 6 *Bing.* 689. (19 *Serg. & Lowb.* 206.)

From this view of the subject, if it be correct, I think it follows, that the husband has the entire controul of this freehold estate, during coverture ; and that it is, within that time, subject to any disposition he alone shall make of it, subject only to the right of entry of the wife and her heirs, after coverture ended ; whether such disposition of it be made, by the direct act of the husband, as by deed ; by act of law, as by levy of execution ; or by the operation of the statute of limitations upon the disseisin of the husband. 2 *Kent's Com.* 111. 1 *Preston on Titles* 334.

In conformity with this principle, it has been holden, that the husband, by his deed alone, may create a freehold in another ; that he may, without joining the wife, make a good tenant of the *precipe,* and by his own act, at common law, might work a discontinuance of the estate of the wife, so *as forever* to defeat her right of entry, and leave her only to her writ of right. To prevent this effect of the husband's act, the stat. 32. *Hen.* 8. was enacted, by which it was provided, "that no act of the husband thereafter to be made, suffered, or done, by the husband only, of any manors, &c. being the inheritance or freehold of his wife, during coverture, shall in any wise make a discontinuance thereof, or be prejudicial to the wife or her heirs, or to such as shall have right, title, or interest to the same, by the death of such wife ; and such other, to whom such right shall

appertain after her death, may enter into such manors, &c. according to their rights and titles therein." This statute did not curtail the power of the husband; it only provided a remedy for the wife and her heirs, by giving to them a right of entry, which it secured to them as fully and explicitly as is done by our statute of limitations; and its construction has been in conformity with the claim of the defendant in the present case. Lord *Coke*, in his comments upon this statute, says: "By the purview of which statute, the wife and her heirs, after *the decease of her husband*, may enter into the lands and tenements of the wife, notwithstanding the alienation of the husband." *Clancy* 162. *Co. Litt.* 113. 326. *a.* Nor can it make any difference, whether the husband's right of entry is lost, by his own direct act, as by his deed; or whether, by his neglect to enter, or by the operation of law, in any other way. *Littleton*, when treating of the disseisin of husband and wife, and a right of entry tolled by a descent cast, says: "The right of the husband is taken away upon the heir, which is in by descent; but if the husband die, *then* the wife may well enter upon the issue, which is in by descent." *Co. Litt.* 246. *a. s.* 403. And in a late case, it was holden, that a right of entry vested in husband and wife, in right of the wife, passes, upon his bankruptcy, to his assignees. *Michell* & ux. & al. v. *Hughes*, 6 *Bing.* 689. (19 *Serg. & Lowb.* 206.) And in no case, which I have seen, has it been suggested, by the court, that the wife had right either of entry or action, while the coverture continued; although in the case of *Mitchell* & ux. v. *Hughes*, it was contended, by counsel, as it has been in this, that the action was brought to enforce the rights of the wife, and that the husband was joined for conformity only. The same principle is effectually recognized in the case of *Hulm* v. *Haylock*, *Cro. Car.* 200. and also in the case of *Wright* v. *Plumptre*, 3 *Barn. & Ald.* 474. (5 *Serg. & Lowb.* 348.) in which it was decided, by the court of *King's Bench*, that to avoid a fine, a husband claiming in right of his wife, must enter within five years after his title accrues; though the wife, if she survive him, will be entitled to enter within five years after his death.

When it is recollected, that by our law, a title is as effectually transferred, by a disseisin of fifteen years, as it can be by deed or other alienation, it is difficult to perceive why such a disseisin

HARVARD LAW LIBRARY

*Hartford,*
*June, 1834.*

Watson
*v.*
Watson.

of the husband will not affect the rights of the wife, in the same manner, as if her land had been conveyed, by her husband's deed, or taken on execution to satisfy his debt; and had such been the case, it is conceded, that this action could not be sustained.

It has been already said, that if the husband has a right of entry into the lands of the wife, *he* may be barred of it, by a fifteen years disseisin; and if this is true, it would be effectually subversive of this principle, to hold, that notwithstanding his own right was forfeited, yet by joining his wife with himself, in one action, he may restore himself to his lost and forfeited rights; for if there can be a recovery in this case, it is the husband who recovers; the husband alone is let into the present and future possession and profits of the land; and it is he who recovers the mesne profits as damages, although he had lost all title to them, many years ago. It is an old doctrine of the law, that coverture, in some cases, will save the rights of the wife; but it is a new one, that it is such a disability on the part of the husband, as not only to protect him from loss, but to restore him to forfeited rights.

WILLIAMS, J. concurred fully with Judge *Church.*

PETERS, J. gave no opinion.

New trial to be granted.