Ranney, J.
A majority of the court concur in the opinion that the law applicable to the facts of this case, requires a judgment for the defendant.
*It appears from the agreed statement of facts that he has
been in the adverse occupancy of the lands for more than twenty-one years before the commencement of this suit; and the only question presented is, can an action of ejectment be'maintained, on the *223 ■demise of husband and wife, to recover possession of her lands, after such a lapse of adverse enjoyment ? That he is conclusively barred, and that no action could be sustained on his demise alone, is con•ceded on all hands. Can he avoid the effect of this bar by joining his wife with him in the action ? To determine this, it is necessary to un lerstand clearly what interest or estate the husband has in the lands of his wife, and the extent and purpose of the remedy by an action of ejectment. If it shall appear that the remedy operates only upon the interest of the husband, and he alone gets the benefit of a recovery, I take it to be undoubted that a bar upon his right is an effectual bar to the action.
“ If the wife, at the time of the marriage,” says Chancellor Kent .(2 Com. 130), “ be seized of an estate of inheritance in land, the husband, upon the marriage, becpmes seized of the freehold jure uxoris, and he takes the rents and profits during their joint lives. It is a freehold estate in the husband, since it must continue during their joint lives; and it may, by possibility, last during his life. It will be an estate in him for the life of the wife only, unless he be a tenant by the curtesy.” “ The emblements growing upon the land, at the termination of the husband’s estate, go to him or his representatives.” “ During the continuance of the life estate of the husband, he sues in his own name for an injury to the profits of the land; but for an injury to the inheritance, the wife must join in the ■suit, and if the husband dies before recovery, the right of action survives to the wife.”
The Supreme Court of this state has been no less explicit. In Canby’s Lessee v. Porter, 12 Ohio, 80, it is said: “ The interest of the husband is a legal estate; it is a freehold during the joint lives of himself and wife, with a freehold in remainder to himself for life, as tenant by the curtesy, and a remainder to the wife ^and her heirs in fee. It is a certain and determinate interest, whose value may be easily ascertained by reference to well-known rules. It is, in every sense, his ‘land,’ within the meaning of the statute, and liable to respond for his debts.”
It is quite unnecessary to refer to other authorities upon a question upon which all the elementary books and decided cases are agreed. By the common law, the freehold of the husband thus acquired was as perfect, absolute, and unfettered, as though derived by deed, and could be aliened by him without the consent of the wife, or taken legal for his debts. It arose by operation of law as an *224 incident to the marriage, and carved out of the estate of the wife a freehold interest in favor of the husband, leaving in her, or her heirs, only the reversion to be enjoyed after the termination of the life estate.
' • Such being the nature and extent of the husband’s interest, the question arises, is this action brought to recover that interest? Lord Mansfield, in the leading case of Atkyns’ Lessee v. Horde, 1 Burr. 60, says: “An action of ejectment is a possessory remedy, and only competent where the lessor of the plaintiff may enter. Therefore, it is always necessary for the plaintiff to show that his lessor had a right to enter, by proving a possession within twenty years, or accounting for the want of it under some of the exceptions allowed by the statute. Twenty years’ adverse possession is a positive title to the defendant: it is not a bar rto the action, or a remedy of the plaintiff only, hut takes away Ms right of possession.” And again, “In truth and substance, a judgment in ejectment is a recovery of the possession (not of the seizin or freehold) without prejudice to-the right, as it may afterward appear, even between the parties. He who enters under it, in truth and substance, can only be possessed according to right, prout lex postulat. If he has a freehold, he is in as a freeholder; if he has a chattel interest, he is in as a termor: and in respect of the freehold, his possession inures according to right. If he has no title, he is in as a trespasser; and without *any re-entry by the true owner, he is liable to account for the profits.” Mr. Angelí, in his late work on Limitations, sec. 369, lays down the general rule, that whenever the right of entry “is taken away by the lapse of the prescribed period, the consequence is, that no action of ejectment (the privilege of bringing which is wholly dependent on the right of entry) can be sustained.” And he adds: “Indeed, the right of entry and the right to maintain ejectment are so much alike, in legal sense, that one may be used in that sense for the other.”
The application of these doctrines to the case in hand is very obvious. The husband having a freehold, with the present right of exclusive enjoyment, and the wife or her heirs only the reversion, the former, of course, has the only right of entry. But upon this-right, and upon all the interest the husband had in the land, the statute has had its full operation for such a length of time as, in the-language of Lord Mansfield, to give “ a positive title to the defendant,” and to “takeaway his (the husband’s) right of possession.” The *225 defendant is now, by force of the statute, invested with all that the-husband formerly had; and as the wife before had no right to the possession as against her husband, she has just as little right now against one invested, by operation of law, with all his rights and interests. The exclusive right of possession which before belonged to the husband, has been lost by him and acquired by the defendant; and as the wife’s right of entry before was postponed to the termination of' the coverture, it can not now accrue at an earlier period; and until it does accrue, it is perfectly clear no action of ejectment can-be maintained predicated upon her interest in the land. The husband’s right of entry, then, is. lost by him, and acquired by the defendant; and the wife’s has not yet accrued. The husband, therefore, has no-right to recover alone, because he has no title; and if the wife could sue, she would have no right to recover alone, because she has no present right of entry. As neither has any right upon which a recovery can be had, suing *alone,' I confess myself wholly unable to see how, by joining their fortunes together, a cause of’ action is made.
If the husband had conveyed his life estate by deed, or it had been sold for his debts, no one would for a moment suppose, that, the purchaser could be dispossessed by an action brought by husband and wife; although she had not joined in the deed in the one case, and was no party to the judgment in the other, so that nothing but the estate of the husband had passed. And yet neither mode-would more effectually take away his right of possession, and invest another with a more perfect title, than an adverse possession for-twenty years. Neither is better understood as an acknowledged method of losing and acquiring a right to real property, than the-operation of the statute of limitations.
The statute does not spend its force upon shadows; it operates, upon substantial interests, and, with the interest, carries all the-remedies incident to th$ right. It has had its effect, in this instance, upon the estate of the husband — has divested him of it, and given, it to the defendant; and with the loss of the estate, has deprived him ©f all remedy, in whatever form pursued, for its recovery. It bascad no effect upon the estate of the wife. The defendant has got no more than the marriage gave to the husband, and holds it subject to all the contingencies to which it would have been subject had it remained in his hands. While the life estate continues, the-law arms her with remedies to prevent injuries to the- *226 reversion; and when it terminates, gives her the benefit of the action of ejectment, to recover the possession. It must terminate with his death, if she survives him; and it may terminate before, by his fault, followed by a divorce; and under our statutes, I have no doubt, that such a state of facts as would warrant a court of chancery in restoring to the wife the rents and profits of her lands, by placing them in the hands of a receiver, would give the receiver the remedy, by ejectment, to recover the possession. As soon as she has the right to the possession, and the enjoyment of the rents and profits, the law gives *her this action to recover it. But the statute -of limitations was never intended to invest her with an estate she had not without it — to give her a right of entry in lands, the pos- . session and profits of which belonged exclusively to her husband. Its whole object and purpose is accomplished, when it is made to save to her such rights as she has; and the law is effectually vindicated from all reproach, when it gives her, at all times, remedies adapted to the redress of any injury she may sustain. This is done by affording her, while her estate is in reversion, reversionary remedies ; and when her right of entry arises, the possessory remedy by ej ectment. If any wrong is done her, by the principles of the common law, it comes of investing the husband with a life estate in her lands, • entitling him to the possession, and not from refusing her a remedy to recover the possession, the right to which she has voluntarily .surrendered, and with which he is invested. As the marriage gave her valuable rights in the property of the husband, and bound him to the payment of all her debts, and for her support during the •coverture, the old-fashioned sense of justice gave him this right to the use and enjoyment of her lands, in the way of compensation. In later times, some devoted champions of the rights of women, have arrived at the conclusion that it is but a relic of barbarism, founded upon man’s tyranny and oppression, which demands instant .abrogation. It may be so; I do not undertake to decide that it is not. If it is, the power of correction is with the legislature, and not the courts. Until that body acts, we must be content to perform the ungallant duty of administering the law as we find it; and until the right of possession is taken from the husband and restored to the wife, we can not very consistently hold, that a remedy which -depends wholly upon the legal right of possession, can bo successfully pursued, in right of the wife, against one who has acquired the husband’s legal right to the possession. Indeed, when the desired re *227, 228 form shall take place, and the marriage contract shall leave the wife in the full enjoyment of all her rights *of property, and the right to pursue every legal remedy, as fully and effectually as though she were sole and unmarried, it may be worth while to consider, whether she should not assume some of the responsibilities of a feme sole, and whether, in justice to others, male and female, she should be exempted from the operation of those beneficial statutes of repose, so essential to the security of titles, and permitted to disturb a possession, taken in the honest belief of a perfect right, and upon which a lifetime of labor has been expended — as is very often done, and may possibly be attempted in this case.
But all this belongs to the law as it might be, and not as it is. As it is, according to our understanding, the marriage invests the husband with a freehold estate in the lands of the wife, entitling him to the exclusive possession during coverture; and, independent of the statute of 1846, subject to be conveyed by him, taken for his debts, or Iqsí by his laches. During its continuance, he alone has the right of entry, and consequently the right alone to maintain the action of ejectment to recover the possession, when it is wrongfully withheld from him. And although he may, for conformity, join the wife with him in the demise, it is still upon his right alone that recovery can be had; and whatever has barred that right, has effectually barred the action.
This view of the subject is sxipported by the decided weight of authority. By an English statute, a married woman is allowed five years after disability removed, within which to enter and avoid a fine levied during the coverture. In Doe ex dem. Wright v. Plumptree, 3 Barn. & Ald. 474, the action was brought by husband and wife, more than five years after the fine was levied — Best, J., before whom it was tried, being of opinion that, although the wife of the lessor of the plaintiff, if she survived him, would be entitled to enter within five years after his death, yet that her husband, not having made an entry or brought his action within the time prescribed, was barred by the fine, directed the jury to find a verdict for the defendant. The paintiff’s ^counsel moved for a new trial, and eon-tended that the husband, who claimed in right of his wife, might en - ter at any time during the coverture. But, the report states, “ the court were clearly of opinion that the husband, not having entered within the five years after his right accrued, was barred by the fine.”
Watson and wife v. Watson, 10 Conn. 77, is one of the earliest. *229 ■cases to be found in tbe American reports. It is only important as presenting, in a forcible manner, tbe reasons upon both sides of tbe •question. Five judges sat upon the hearing; two (Judges Daggett and Bissell) concurred in opinion, that the action was not barred; while two others (Church and Williams) thought differently; and the fifth (Judge Peters) gave no opinion. In.the opinion of the former, it is conceded that the statute had barred the rights of the husband; but it is asserted that this right is merely incidental to the estate of the wife, growing out of the coverture, and not investing him with any distinct legal estate; that their interests are not •separate, in such a sense that he can be barred, without directly affecting her substantial rights; that she must join with him in the action; and a denial of her right to recover would be to hold that no person under disability, after the prescribed time had elapsed, • could maintain an action until the disability was removed. And to distinguish it from the English cases relating to fines, it is claimed that a fine is a species of conveyance which passes the whole right, •and operates by way of bar to the right of property, while the statute of limitations is a bar to the remedy only.
It is evident that this whole argument is built upon the denial of -any distinct estate in the husband, capable of separation from that remaining in the wife. This is certainly opposed, not only to the teachings of every elementary author, but to the decision in Canby’s Lessee v. Porter, already cited. It is there expressly asserted to be a legal estate of freehold for the joint lives of husband and wife; and it never has been doubted that it might be separated, without her consent, from her estate in reversion, by *his conveyance, or by being siezed for his debts. So far from her being an indispensable party to the action to recover the possession, it is well settled that it may be recovered upon his demise alone; while the position in respect to the operation of the statute of limitations, is directly opposed to the doctrine of Lord Mansfield, in the leading •case of Atkyns’ Lessee v. Horde, where, as we have seen, it is held not a bar to the action or remedy of the plaintiff only, but takes ¡away his right of possession, and confers a positive title upon the defendant; and to the numerous cases in which it has been held to confer a perfect right of entry, enabling the occupant to recover in •ejectment without other evidence of title. Chiles v. Jones, 4 Dana, 483 ; Larman v. Huey, 13 B. Mon. 447; Breeding v. Taylor, Ib. 482.
*230 It is certainly true, that a person under disability may sue at any time during its continuance, and need not wait until it has terminated. Ang. on Lim., sec. 195. But a capacity to sue and enforce such rights as a person in such situation may have, is one thing; and the question whether he has such rights, adapted to the remedy sought, as will enable him to succeed, is quite another and different thing. While the statute protects the one, it makes no attempt to confer the other. The rights of such persons, as well as others, to property; must be sought elsewhere, but when found to exist, they are not to be lost or forfeited by a failure to enforce them.
These positions are all examined with marked ability in the opinion of Judge Church; and he arrives at the conclusion, that by the common law, the husband has a freehold interest in the lands of the wife, giving him a vested estate in possession, and the right of entry, and, necessarily, postponing the right of entry to the wife and her heirs, until after coverture ended. That upon this right of entry the statute operates, and that “to hold otherwise, would be to •claim the.strange doctrine, that there may be a freehold estate in possession without a seizin of it; or that there may be a seizin without a possibility of disseizin.” That during *the coverture, he has the entire control of the estate, is entitled to the rents .and profits; it is subject to his disposition, liable to his debts, and may be lost by his laches; and whether the right of entry is lost in the one way or the other, it equally bars all interests during the existence of the particular estate. That he can not restore himself to his lost and forfeited rights, by joining his wife with him in the action ; that if a recovery is had, it is his recovery; he alone is let into the present and future possession of the land, and recovers the mesne profits as damages.
McDowell v. Potter, 8, Barr 189, was an action brought by husband and wife to recover the proceeds of a legacy, collected by the ■defendant, belonging to the wife. More than six years having ■elapsed since it was received, and the statute being pleaded, one of the questions arising was, whether the action was barred. The •court held that it was, notwithstanding the plaintiffs gave evidence that the husband had always treated it as the separate property of the wife. They admit the right of the wife, if she should survive the' husband, to sue for and recover the money, within, six years after disability removed; but as a recovery in this action would mure to his benefit, and reduce the money to his possession, they *231 considered the action as his and not hers, and the delayas his fault,, effectually barring all his rights. If it should be admitted that the-doctrine, in this case, was pressed too far, and that the wife stood in a position to derive some legal benefit from the recovery, either by its inuring to her sole benefit .under the arrangement, or through her lights of survivorship; still, its force is not impaired, when applied to a case like this, where no attempt to surrender the marital right exists, and whore the remedy goes no deeper than the husband’s exclusive right to the possession, and entitling him alone to all the fruits of the judgment, direct and incidental.
The very question upon which this case depends, has been repeatedly decided in favor of the bar, by the court of appeals in Kentucky.* Neal v. Robertson, 2 Dana, 86; Downing v. Ford, 9 Dana, 391; Gill v. Fauntleroy, 8 B. Mon. 186; Davis v. Trigle, Ib. 542; Sharp v. Head, 11 B. Mon. 277.
The point was first presented in the case cited from 2 Dana. The act which governed the, case provided that “ the limitation prescribed in this act shall not extend to femes covert, etc.; but such persons shall be at liberty to institute such suits at any time within seven years after their disabilities áre removed.” The court say: “ There' is nothing in this language which does,' of itself, constitute a saving in favor of the husband, so as to prevent his being barred. If there-be such saving, it must result from the general principles of law, in order the better to secure and preserve the right of the wife. - We are not aware of any principle that will so operate.” “ The saving was not intended to guard his interests against the effect of his own laches, but to save hers, so far as they were separate and disconnected from his. We do not perceive wherein their interests are so intimately blended, as indispensably or even necessarily to require an enforcement of her right in his lifetime. Their-interests are so far divisible, that he can maintain a suit in his own name alone for the land, and can, by his separate deed, alienate it during their joint lives. So where a recovery is had in a suit brought by both, it is still for his sole benefit during his life. As, then, the recovery is for his sole benefit, and as his separate alienation bars a recovery, on a demise, in the names of both, no good reason is perceived why he should be permitted to avail himself of the saving in favor of the wife, to protect him against the effects of laches in this, more than in any other description of cases.”
The case of Sharp and Wife v. Head was decided as late as 1850.. *232, 233 It was an action of ejectment, brought on the demise of husband and wife, to recover lands that .had descended to her during the coverture. The statutory bar had run against the husband, and the court held the action barred. They say: “ He might, as husband, have maintained ejectment, on a demise, in *his own name, and have recovered for his sole benefit during their joint, lives, because he had an interest and legal title during the joint lives of himself and wife. As against him the statute continued to-run. Uniting his wife’s name with his, whilst it did not prejudice her rights, did not aid him.”
A similar ruling seems to have been made by the Supreme Court of Tennessee, in the case of Guion v. Anderson, 8 Hump. 325.
I have carefully examined the several statutes upon which these-decisions were made, and find nothing in them materially different from the saving clause in section 2 of our act of 1831, upon which the rights of the parties in this case arc made to depend.
2. The plaintiffs are not helped by the act of July 4, 1846, in relation to the interests of husbands in the estate of their wives. Swan’s Eev. Stat. 712. Indeed, there is reason to believe, if we' are permitted to look beyond the agreed statement into the evidence filed in the ease, that the bar had intervened long before the passage of that act; and it is at least doubtful, from the statement istelf, whether a fair construction does not lead to the same result. It shows the defendant’s possession to have been continued more than twenty-one years; and as the obligation is upon the plaintiffs-to bring themselves within the exception, it may be doubtful whether this ambiguity should not operate against them and in favor of the defendant, and authorize us to assume as much more as would be necessary to carry the case back of the passage of that law. But the statute has in no manner altered, diminished, or restricted the interest and estate which the husband acquires in the lands of the wife. It is still an estate of freehold, entitling him to-the possession, and while his interests alone are in question, may be lost by his laches, -as fully and effectually as before the statute was passed. It has very wisely provided that it shall not be conveyed by him, unless she joins in the deed, nor taken for his debts. In other words, it shall not be placed beyond her reach, in case it is-needed for her comfortable support, *as it might be if he was permitted to convey, or it was subject to be sold for his debts.
But it is her rights,- and not his, the statute was designed to pro- *234 feet; and as the statute does not take from the adverse occupant the rights the statute of limitations was intended to confer for his protection, we do not feel authorized to deny him the benefit of that protection, unless such a case is made as would entitle the wife to the use of the property as against the husband. While the interests of the husband are alone presented, they must be made subservient to the paramount rights of the adverse occupant.

Judgment for the defendant.

Thurman, C. J., and Bartley, J., dissented.